[Cite as *State v. McCrone*, 2019-Ohio-337.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-01-007 |
| | : | O P I N I O N |
| - vs - | | 2/4/2019 |
| | : | |
| ALLEN L. McCRONE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32873

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Bryan S. Hicks, P.O. Box 359, Lebanon, Ohio 45036, for appellant

**RINGLAND, J.**

{¶ 1} Allen McCrone appeals his convictions in the Warren County Court of Common Pleas for burglary, attempted burglary, and possession of criminal tools. For the reasons described below, this court affirms McCrone's convictions.

{¶ 2} A Warren County grand jury indicted McCrone on three counts of burglary, two counts of attempted burglary, five counts of receiving stolen property, and one count of

possession of criminal tools.[1]  The state alleged that McCrone, a resident of Springdale, Ohio, was responsible for series of residential burglaries and attempted burglaries in January and February 2017, in Mason, Ohio.

{¶ 3}  At a bench trial, the state submitted evidence that police in nearby Montgomery, Ohio, were investigating burglary offenses occurring in their jurisdiction.  Through their investigation, Montgomery police developed McCrone as a suspect.

{¶ 4}  Montgomery police obtained two search warrants to further their investigation. The first authorized police to obtain McCrone's cellular phone location every 15 minutes from Sprint, McCrone's cellular service provider.  Police began receiving McCrone's cellular phone location data on January 24, 2017.

{¶ 5}  The second search warrant, obtained a few days later, authorized police to place a GPS tracking device on McCrone's vehicle.  An officer clandestinely attached the device to McCrone's vehicle and police began tracking the vehicle on or around January 27, 2017. Montgomery police eventually shared the information obtained via the search warrants with Mason police.

{¶ 6}  The first burglary in this case occurred in Mason on January 24, 2017. Deborah Rentfrow testified that she was in her home on St. Andrews Court at approximately 11:00 p.m.  She heard a door chime indicating someone had entered the home.  She went to see who it was.  She saw the back of an individual wearing dark clothing leaving her home through the door to the garage.

{¶ 7}  Rentfrow noticed that a purse that had been on a table by the door was now missing.  She entered the garage and found that the garage door, previously closed, was now open.  Her unlocked vehicle was parked in the driveway.  There was a remote garage door opener in the vehicle.  A detective testified, based on Sprint records obtained via the

---

1. McCrone has not appealed his convictions for receiving stolen property.

search warrant, that McCrone's cellular phone was reporting its location as within 1000 meters of Renfrow's address at the time Rentfrow observed the intruder.

{¶ 8} The next offenses all occurred several weeks later in the "Long Cove" neighborhood of Mason. Tarig Khan testified that around 2:00 a.m. on February 19, 2017, he saw someone walking in his house, holding a flashlight, and wearing a dark-colored hooded sweatshirt. He chased the person out of his home. Khan reported no items missing from the home. However, both vehicles inside the garage appeared to have been entered and searched.

{¶ 9} Khan's home had an exterior security camera focused on the driveway. The state introduced camera footage taken during the burglary. It depicts a slender individual wearing dark clothing walk up to a vehicle parked in Khan's driveway, open the door to the vehicle, and enter it. Subsequently, Khan's garage door opens and the individual enters the garage. Several minutes later, the intruder flees from the garage and Khan appears on camera.

{¶ 10} Police dusted the vehicle in the driveway for fingerprints. They recovered several latent prints. Police entered the prints into fingerprint matching software and a national database but did not obtain a match. However, a latent fingerprint examiner with the Warren County Sheriff's Office compared McCrone's known fingerprints to one of the recovered latent prints and determined there was a match.

{¶ 11} When Mason police learned of the burglary at Khan's residence, they reviewed the GPS tracking data on McCrone's vehicle. The data indicated that McCrone's vehicle left the area of McCrone's residence, in Springdale, Ohio, shortly after midnight on February 19 and travelled to the Mason area. The vehicle stopped on Arrowwood Drive in Deerfield Township at 2:14 a.m. Arrowwood Drive is less than a mile from the Khan residence if using

surface streets and less than that if traveling through yards. McCrone's vehicle departed Arrowwood Drive at 2:39 a.m.

{¶ 12} The following evening, police monitored McCrone's GPS tracker in real time. McCrone's vehicle left McCrone's residence at approximately 11:45 p.m. on February 19 and arrived at Arrowwood Drive shortly after midnight on February 20. Several police officers responded to Arrowwood Drive, located McCrone's empty vehicle, and set up a perimeter around the vehicle to wait for McCrone to return.

{¶ 13} Ken Roe lives on South Shore Place in Long Cove. At approximately 12:50 a.m. on February 20 he took his dog outside. He was outside the home for two minutes or less. Upon returning inside, he saw a slender person wearing dark clothing leaving his home. The intruder went out the back door and onto the rear deck and then jumped off the deck.

{¶ 14} Hope O'Brien testified that she was Roe's neighbor on South Shore Place. She was on vacation and no one was at her residence on February 19 and 20. However, her security camera captured a photo of an individual on her back patio. A photograph introduced at trial depicts a person appearing to be a slender male. There was no evidence that the individual gained access to the interior of O'Brien's home.

{¶ 15} Shawn Mullins, another neighbor on South Shore Place, testified that he was not home overnight on February 19-20, although he was travelling home around that time. Exterior security cameras at his home captured footage of a slender individual wearing dark clothing walking through Mullins' backyard at approximately 12:45 a.m. on February 20. The individual then walks on to the home's back porch, approaches a door, appears to attempt to move the door handle, then, unable to gain entry, leaves the porch and property.

{¶ 16} Meanwhile, Officer Michael Bishop was hiding near McCrone's vehicle. Bishop received a report of a burglary that had just occurred in Long Cove. The report described the suspect as wearing blue jeans, a black hooded sweatshirt, wearing a hat, and carrying a

flashlight. Approximately 40 minutes after this report, Bishop heard a subject running behind him.

{¶ 17} McCrone appeared. Bishop ordered him to the ground and he immediately complied. Bishop subsequently placed McCrone under arrest. McCrone was wearing blue jeans and a black hooded sweatshirt. He had gloves and a flashlight. Although the roads, sidewalks, and paved areas were dry that morning, McCrone's shoes were wet and muddy.

{¶ 18} McCrone gave police permission to search his vehicle. He told them the keys were under his vehicle tire. In the vehicle, police found a duffle bag containing more than 80 gift cards. McCrone claimed that the gift cards were his, and that they had been given to him as gifts. McCrone explained to a detective on scene that he was there to visit a friend named Calvin Powell who lived in the apartment complex located on Arrowwood Drive.

{¶ 19} During a subsequent interview at the police station, McCrone offered further details as to why he was parked on Arrowwood Drive. He told detectives that he was in the middle of a "mid-life crisis," and that he had traveled to that area to go on a run. He admitted having run through "that neighborhood" but later claimed that he had only run on adjacent streets and had not entered Long Cove. He again stated that he had been attempting to visit a friend of his named Calvin Powell. However, he looked into Powell's window and saw that Powell was not home, so he left. He did not provide an address for Powell. Police attempted to locate a Calvin Powell and found no evidence that an individual by that name lived in Warren County.

{¶ 20} Police were able to trace some of the recovered gift cards back to their original owners. These individuals testified that gift cards had either been removed from their vehicles or taken from their homes in burglaries. McCrone later changed his story about receiving the gift cards, telling a detective that he found the gift cards in a locker in Dublin, Ohio.

{¶ 21} The court found McCrone guilty on all counts. He appeals, raising a single assignment of error.

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶ 24} McCrone argues that the state submitted insufficient evidence to permit a factfinder to convict him of the various offenses. With respect to the burglary offenses, McCrone argues that the state failed to offer sufficient evidence to prove his identity. With respect to the attempted burglary offenses, McCrone contends that there was insufficient evidence to prove that he took a substantial step towards committing burglary.

{¶ 25} The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. *State v. Everitt*, 12th Dist. Warren No. CA2002-07-070, 2003-Ohio-2554, ¶ 10. In reviewing the sufficiency of the evidence, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### Rentfrow burglary

{¶ 26} McCrone argues that the only evidence placing him near the location of the Rentfrow home was a detective's testimony that he was in the area based on documents provided by Sprint. McCrone argues that this evidence was inadmissible hearsay because no representative of Sprint testified. However, McCrone did not object to the detective's testimony or the Sprint documents on this basis at trial. Instead, McCrone argued either that

the Sprint documents were not properly authenticated or that the detective was not qualified to "interpret" or provide an opinion as to the content of the Sprint documents.

{¶ 27} During a sidebar discussion, the state clarified that it had written confirmation from McCrone's counsel to stipulate to the authenticity of the Sprint records and that the state need not subpoena the custodian of records at Sprint for authentication purposes. Ultimately, the court overruled McCrone's objections, finding that his arguments went to the weight of the evidence rather than its admissibility.

{¶ 28} Because McCrone did not object to this evidence on the basis he now asserts on appeal, he is limited to a review for plain error. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997). This court should notice plain error with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 84.

{¶ 29} McCrone cannot establish plain error because he cannot demonstrate an obvious legal error. On their face, the Sprint records appear to qualify as records of regularly conducted activity and are arguably admissible under Evid.R. 803(6). *See State v. Glenn*, 12th Dist. Butler No. CA2009-01-008, 2009-Ohio-6549, ¶ 21 (affirming admission of cellular telephone records under Evid.R. 803[6]). The are no obvious indicia of unreliability in the documents and McCrone did not argue at trial that the detective's testimony was inconsistent in any respect with the content of the records. McCrone stipulated to the authenticity of the

Sprint records and thus he was not concerned with their accuracy. The detective who discussed the Sprint records at trial did not interpret or otherwise give his opinion as to the content of the documents. Thus, there was nothing objectionable in his discussion of the Sprint records' content.

{¶ 30} There was more evidence identifying McCrone as the perpetrator of the Rentfrow burglary than the detective's testimony or the Sprint documents. There were notable similarities between the Rentfrow and Khan burglaries. In both burglaries the perpetrator was observed wearing dark clothing and the method of gaining entry to the home was the same, i.e., the perpetrator likely accessed an unlocked vehicle in a driveway and used a remote garage door opener inside the vehicle to gain access to the home. And McCrone was placed at the Khan burglary by his fingerprint and the GPS location data. Consequently, this court concludes that the state submitted sufficient evidence to allow a rational factfinder to find McCrone guilty of the Rentfrow burglary.

<u>Khan burglary</u>

{¶ 31} McCrone argues that the state's evidence was insufficient to prove him guilty of the Khan burglary because the conviction relied exclusively on the state's identification of him through a latent fingerprint recovered from Khan's vehicle. As he did at trial, McCrone attacks the qualifications of the state's latent print examiner. The lower court overruled McCrone's objections at trial, finding that the examiner was qualified to provide an expert opinion.

{¶ 32} "'The qualification of an expert is a matter for determination by the court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion.'" *State v. Mack*, 73 Ohio St.3d 502, 511 (1995), quoting *State v. Maupin*, 42 Ohio St.2d 473, 479 (1975). Evid.R. 702 provides that a

witness may testify as an expert if he can assist the trier of fact in the search for truth, and all the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

The qualifications which may satisfy these requirements are "multitudinous." *Mack* at 511.

{¶ 33} The examiner testified that he had taken courses in basic print classification and received training at a private school in North Carolina in basic print comparison, advanced latent ridgeology, and latent palm-print comparison. He had also taken a two-day course from the FBI for advanced comparison for the ten-print examiner. He had compared and identified hundreds of latent prints. The examiner further testified about his methodology of comparing latent prints to known prints and how he utilized this methodology to compare the print recovered from Khan's vehicle to a set of McCrone's known fingerprints. The examiner further testified that his opinion finding a match was verified by another latent print examiner.

{¶ 34} This court concludes that the lower court did not abuse its discretion in allowing the examiner to provide an expert opinion. Defense counsel thoroughly cross-examined the witness to identify possible weakness in his qualifications, including that McCrone's trial was his first time testifying as an expert and that he did not possess certain qualifications or credentials held by fingerprint examiners. However, as specifically noted by the lower court in its ruling, these arguments went more to the weight to be attributed to the examiner's opinion, not his qualifications to provide the opinion. McCrone did not submit any evidence,

either documentary, or through a competing expert, that would suggest that the examiner's methodology was unscientific. Instead, McCrone suggested through cross-examination that the examiner's opinion was unreliable. This court finds no abuse of discretion in the court's decision to admit the examiner's expert testimony.

{¶ 35} Upon review, this court concludes that there was sufficient evidence submitted at trial to allow a factfinder to find McCrone guilty of the Khan burglary. Security camera footage depicted a slender individual wearing dark clothing entering an unlocked vehicle parked in Khan's driveway. The individual presumably used a remote garage door opener located in the vehicle to open Khan's garage door. The individual entered the residence. Police recovered McCrone's fingerprint from the unlocked vehicle. McCrone did not have permission to be on Khan's property and there was no reason for McCrone's fingerprint to be found on Khan's vehicle. The GPS tracker attached to McCrone's vehicle demonstrated that the vehicle was parked nearby on Arrowwood Drive at the approximate time of the burglary. McCrone did not reside near Arrowwood Drive and had no legitimate reason for being there at that time. The GPS tracker indicated that McCrone's vehicle returned to the area of McCrone's residence shortly after the burglary. Thus, the trial court had ample circumstantial evidence from which it could conclude that McCrone was guilty of the Khan burglary.

Roe burglary

{¶ 36} McCrone argues that the evidence was insufficient to convict him of burglarizing the Roe residence because Roe could only describe an individual wearing dark clothing. However, the state established that McCrone's vehicle stopped at Arrowwood Drive late on February 19, shortly before the Roe burglary and two attempted burglaries at neighboring houses. McCrone had no legitimate reason for being parked on Arrowwood Drive and his explanation to police as to why he was there was nonsensical and changed over time. Roe described the individual as slender and wearing dark clothes, which was consistent with

McCrone's body type and the clothing he was wearing when apprehended by police while returning to his vehicle. McCrone was in possession of typical burglary tools. His muddy and wet shoes were consistent with travel through yards, not running on the streets. This court concludes that McCrone's conviction for burglary at the Roe residence was supported by sufficient evidence of his identity.

### O'Brien attempted burglary

{¶ 37} McCrone argues that his conviction for the attempted burglary of the O'Brien residence was supported by insufficient evidence because the only evidence submitted was a photograph of an individual on the O'Brien patio. McCrone argues that even if the factfinder accepts that the photographed individual is him, this was not sufficient evidence to establish that he attempted to burglarize the O'Brien residence.

{¶ 38} A criminal attempt to commit a burglary offense requires the state to prove that the defendant purposely or knowingly engaged in conduct that, if successful, would constitute or result in the offense. R.C. 2923.02(A). The Ohio Supreme Court has defined criminal attempt as an act or omission constituting a substantial step in a course of conduct planned to culminate in the actor's commission of the crime. *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 95. A "substantial step" requires conduct that is "strongly corroborative of the actor's criminal purpose." *Id.* Thus, to convict him of attempted burglary, the state was required to prove that McCrone took a substantial step towards purposely trespassing into O'Brien's home with the intent to commit a criminal offense. R.C. 2911.12(A)(3).

{¶ 39} McCrone appeared on the O'Brien patio at nearly 1:00 a.m. He did not know O'Brien and lacked permission to be on her patio. An individual wearing similar clothing had just burglarized a neighbor's home on the same street and entered the back porch of another neighbor's home and attempted to trespass into the home by moving a door handle. The evidence was sufficient to allow a factfinder to find that McCrone's appearance on O'Brien's

patio constituted evidence of a substantial step towards completing a burglary offense and therefore sufficient evidence supported McCrone's conviction for attempted burglary of the O'Brien residence.

### Mullins attempted burglary

**{¶ 40}** Finally, McCrone argues that the state failed to submit sufficient evidence to support the count of attempted burglary at the Mullins residence. However, this offense was better documented than the O'Brien attempted burglary. An individual wearing dark clothing was depicted in security camera footage walking onto the back porch and attempting to enter the Mullins residence. Given all the circumstantial evidence implicating McCrone in the area burglaries, the state's evidence was more than sufficient to prove that McCrone took a substantial step towards burglarizing the Mullins residence.

### Possession of criminal tools

**{¶ 41}** McCrone contends that if there was insufficient evidence to convict him of burglarizing the various homes in Long Cove, then his conviction for possessing criminal tools must fail as well. Having determined that there was sufficient evidence to convict McCrone of all the Long Cove burglary offenses, this argument is meritless. This court overrules McCrone's sole assignment of error.

**{¶ 42}** Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.