[Cite as *State v. Monebrake*, 2022-Ohio-246.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS.  CA2021-04-004 |
| | | CA2021-04-005 |
| | : | CA2021-04-006 |
| - vs - | | |
| | : | O P I N I O N |
| | | 1/31/2022 |
| BRADLEY E. MONEBRAKE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case Nos. 20CR013278, 20CR013275, and 20cr013276


David A. Yost, Ohio Attorney General, and Andrea K. Boyd, Assistant Attorney General, for appellee.

Michele Thomas, Attorney at Law, LLC, and H. Michele Thomas, for appellant.



**PIPER, P.J.**

{¶1}    Appellant, Bradley Monebrake, appeals his convictions in the Preble County Court of Common Pleas for attempted rape and attempted gross sexual imposition.  For the reasons detailed below, we affirm the trial court's decision.

{¶2}    Monebrake and his wife, "Alice," have three children.[1]  At the time of trial, their oldest son was ten, their daughter, "Jane," was nine, and their youngest son was six.  Jane

---

1. For privacy and readability, we are using fictionalized first names.

was seven years old during the Labor Day camping trip discussed below.

{¶3} The record reveals that Monebrake and Alice would engage in sexual role play, which often involved the acting out of incest fantasies. Over time, Monebrake moved on from simply talking about sexual scenarios and began formulating plans to act on his fantasies. In text messages, Monebrake told Alice that they should engage in sex acts with "[b]rother and sister or mom and son or daughter and father," "[l]ike real playing." Alice, referring to their role playing, said that they already did that. Monebrake responded that he wanted to do it for real, and that he was serious. He begged her to try incest with him. Monebrake asked Alice to perform oral sex on their boys and told her that he would perform oral sex on Jane. He also staged a scenario where their oldest son walked in on them having sex to see if he was interested in joining. Alice explained that Monebrake was insistent and often succeeded in pushing sexual boundaries by asking over and over again.

{¶4} Monebrake planned a camping trip at Hueston Woods over the 2019 Labor Day weekend with his family and his mother. On the drive there, Monebrake told Alice that he "had an idea" for the camping trip. Later he told her that she could go "under the covers" with the children and, during the course of the weekend, described his ideas for them to engage in incest. He became insistent and raised his incestuous ideas nearly every time he was alone with Alice.

{¶5} When they arrived at their campsite, Monebrake's mother had already parked her camper on their lot and the Monebrake tent was set up. The tent was divided into three areas separated by zippered doors. There was the main area at the center of the tent and two side rooms. Monebrake and Alice slept in the main area while their two sons slept in one side room and Jane slept in the other side room.

{¶6} On the first night, the children went to bed while Monebrake and Alice sat

around the campfire. After consuming a few beers, Monebrake and Alice retired to the main area in the tent and began having sex. While doing so, Monebrake again brought up his incest fantasy. Alice testified:

> He said that I could go under the covers with the kids. I could go under the covers on the boys and put their cock and balls in my mouth while they're sleeping. Or I could go over to [Jane's] tent and touch her or lick her while she's sleeping.

Alice explained that "lick her" meant that Monebrake wanted her to lick Jane's vagina. She explained that Monebrake specifically stated that he wanted her to "lick [Jane's] pussy." Alice stated that Monebrake's behavior was different than prior role playing. Alice testified that Monebrake scared her and was intimidating. At some point, Alice testified that Monebrake stopped having sex with her and walked over to Jane's side of the tent. He then unzipped the door dividing the rooms. Alice explained that Monebrake did not have any clothes on and had an erect penis. Monebrake tied the door back as Jane remained asleep. He then physically moved Alice from their bed into Jane's room and positioned Alice so that she was looking over the edge of Jane's mattress. Monebrake then began penetrating Alice from behind and repeatedly told her to touch Jane. When Alice refused, he allowed her to go back to the bed in the main area. Monebrake then zipped the door shut and continued having sex with Alice.

{¶7} The next day, Monebrake asked Alice if she was going to "do it" that night and told her that he wanted her to perform cunnilingus on Jane. Monebrake suggested that they dress Jane in a nightgown so that it would be easier to access her private areas. He also said they should tell Jane they forgot to pack clean underwear so that she would go to bed without underwear. Monebrake also proposed giving Jane medication that would make her tired; he insisted that he did not want her to be "scarred."

{¶8} That evening, Jane slept in the camper with Monebrake's mother. Monebrake and Alice again had sex at night, but Monebrake expressed disappointment that Jane was in the camper. The next day, Alice pulled Monebrake's mother aside and told her that all the children needed to sleep in the camper that night. Alice did this because "it was the last night at the campground and he had been talkin' about it for two days now and I seen [sic] how serious he was when he opened her tent and I didn't wanna be put in that situation again."

{¶9} When they returned home from the camping trip, Monebrake noticed that Alice was behaving differently and asked her if she was going to the police station. He also accessed Alice's phone history and asked about her use of the "voice recorder" application on her phone. Alice had, in fact, recorded Monebrake asking her if she was "going to lick it out," referring to cunnilingus on Jane, but the recording was of poor quality.

{¶10} Shortly thereafter, Monebrake called his mother and told her that he had done something and was going to jail. Alice notified authorities and obtained a protection order. Alice stated that she felt this was necessary because Monebrake had gone beyond role play. Though she had previously consented to role play, Alice was concerned Monebrake now wanted "real play," not "role play."

{¶11} Following Alice's disclosure to authorities, Monebrake was interviewed by Captain Shane Hatfield with the Preble County Sheriff's Department. In the interview, Monebrake admitted to having sex in the tent with Alice at the end of Jane's mattress and provided details from that incident. Captain Hatfield testified:

> CAPTAIN HATFIELD: * * * He admitted to tryin' to get [Alice] * * * the plan was to get [Alice] to perform sex with him in a tent while camping at Hueston Woods and during their intercourse for [Alice] to perform sex acts on the kids. For example, penetrate the middle age girl, who was approximately seven at

the time, with her finger while he was havin' sex with her.

\* \* \*

PROSECUTOR: Okay. And when he was making statements and admissions regarding oral, was there any statements or admissions regarding oral sex on the female child?

CAPTAIN HATFIELD: That at one point that he would perform oral sex on the girl.

PROSECUTOR: And did he make statements and admissions to you about his semen and his children?

CAPTAIN HATFIELD: Yes. That if he ejaculated on the wife, he wanted the wife to rub it on the girl.

Monebrake also admitted to making statements and planning to perform sexual acts on the children. He then discussed steps that he had taken in the past to facilitate incest. For example, Monebrake admitted that his oldest son had previously walked in on him and Alice having sex on the living room couch. Captain Hatfield stated that "[Monebrake] indicated to me that he had talked to [Alice] about it and he wanted to have sex with her and have the kid walk in and see if it was inviting to the kid."

{¶12} During trial, the state presented testimony from Captain Hatfield, Alice, and a Special Agent who conducted an extraction of Monebrake's phone. Following the conclusion of the state's case, Monebrake moved for a Crim. R. 29 acquittal, arguing that the conduct alleged did not constitute a "substantial step" in the crimes charged. The trial court denied Monebrake's motion and Monebrake presented his defense. Monebrake presented testimony from his mother and then testified on his own behalf. Following the close of evidence, the trial court found Monebrake guilty of attempted rape, attempted gross sexual imposition, and voyeurism.[2] The trial court found Monebrake not guilty of possessing

---

2. Monebrake did not appeal his conviction for voyeurism.

criminal tools. The three counts were merged for purposes of sentencing and Monebrake was sentenced to 10 years to life for attempted rape. Monebrake now appeals, raising two assignments of error for review.

{¶13} Assignment of Error No. 1:

{¶14} THE TRIAL COURT ERRED BY DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL ON THE CHARGE OF ATTEMPTED RAPE.

{¶15} Assignment of Error No. 2:

{¶16} THE TRIAL COURT ERRED BY DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL ON THE CHARGE OF ATTEMPTED GROSS SEXUAL IMPOSITION.

{¶17} In his first and second assignments of error, Monebrake alleges the trial court erred by denying his Crim.R. 29 motion for acquittal on the charges for attempted rape and attempted gross sexual imposition. We find Monebrake's arguments to be without merit.

{¶18} Pursuant to Crim.R. 29(A), "the court * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." The standard of review for a denial of a Crim.R. 29 motion is the same standard used for review of a sufficiency of the evidence challenge. *State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 21. "In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. Therefore, the reviewing court must examine the evidence produced at trial to determine whether any rational trier of fact could have found the essentials elements of the crime proven beyond a reasonable doubt, after viewing the

evidence in a light most favorable to the prosecution. *State v. Watson*, 12th Dist. Butler No. CA2016-07-138, 2017-Ohio-1402, ¶ 10.

{¶19} As relevant here, Monebrake was convicted of attempted rape and attempted gross sexual imposition. Rape is defined under R.C. 2907.02 and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" Sexual conduct includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and digital penetration of the vagina. R.C. 2907.01(A).

{¶20} Gross sexual imposition is defined in R.C. 2907.05, which states:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> * * *
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶21} An "attempt" is "conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A); *State v. Clowers*, 12th Dist. Clermont No. CA2019-01-009, 2019-Ohio-4629, ¶ 20. The conduct must "constitut[e] a *substantial step* in a course of conduct planned to culminate in [the] commission of the crime." (Emphasis added.) *State*

*v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 95.[3]  In order for the conduct to rise to the level of a substantial, it must be "strongly corroborative of the actor's criminal purpose." *State v. McCrone*, 12th Dist. Warren No. CA2018-01-007, 2019-Ohio-337, ¶ 36.  *See, e.g,* *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 33 (words and actions may be considered in determining whether a substantial step toward an offense had occurred).

{¶22}  The case law for attempted sex crimes usually concerns attempted rape but those cases are also instructive in our consideration of the crime of attempted gross sexual imposition.  *State v. Peyatt*, 7th Dist. Monroe No. 18 MO 0006, 2019-Ohio-3585, ¶ 16.  To sustain a conviction for attempted rape, "[t]here must be evidence indicating purpose to commit rape instead of some other sex offense, such as gross sexual imposition, R.C. 2907.05, which requires only sexual contact."  *State v. Davis*, 76 Ohio St.3d 107, 114 (1996).  Similarly, to sustain a conviction for attempted gross sexual imposition, the defendant's conduct must demonstrate the purpose to commit gross sexual imposition.  *Id;* *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 23 (holding that the mens rea of R.C. 2907.05[A][4] is purpose).

{¶23}  The supreme court has found that merely removing a victim's clothing is insufficient evidence of attempted rape.  *Davis* at 114.  The state must introduce evidence that the defendant attempted to commit the sex crime.  *State v. Lucas*, 5th Dist. Tuscarawas No. 2005AP090063, 2006-Ohio-1675, ¶ 23-25 (sufficient evidence for attempted rape where the defendant had expressed a desire to have sex with the victim and later attempted

---

3. In *Group*, the Ohio Supreme Court held solicitation accompanied by the requisite intent may constitute an attempt.  Group was an inmate incapable of actually committing the murder himself due to his incarceration. However, his words and actions in attempting to have a witness murdered constituted a substantial step for the purposes of supporting the elements of attempted aggravated murder.  *Id.* at ¶ 96-103.

to forcibly remove the victim's pants); *State v. Brown*, 8th Dist. Cuyahoga No. 98540, 2013-Ohio-1982, ¶ 21 (sufficient evidence of attempted rape where the defendant was found standing over the victim with his pants partially removed while intending to remove the victim's pants).  *Compare Peyatt*, 2019-Ohio-3585 at ¶ 21 (merely exposing oneself and saying "look" is insufficient evidence for the crime of attempted gross sexual imposition).

{¶24}  In *State v. Allgood*, 9th Dist. Lorain No. 17CA011224, 2019-Ohio-738, a father found another man, the defendant, in a bathroom with his two-year-old son.  *Id.* at ¶ 2.  At the time, the defendant was holding his genitals in one hand while his other hand rested on the toddler's neck.  *Id.*  The toddler's pull-up diaper had been removed.[4]  *Id.*  The court found that the defendant's conduct constituted a substantial step toward engaging in sexual conduct with the victim and, therefore, was attempted rape.  *Id.* at ¶ 14.  In so doing, the court emphasized that the "substantial step" need not be the last possible event short of completing the crime.  *Id*. at ¶ 11.  Rather, the entirety of the circumstances, including the age of the victim, should be considered.  *Id*; *Peyatt* at ¶ 18.

{¶25}  Following review, we find there is sufficient evidence that demonstrates that Monebrake's conduct constituted a substantial step toward engaging in sexual conduct with Jane.  There was also sufficient evidence to demonstrate that Monebrake committed a substantial step toward engaging in sexual contact, or by causing another to have sexual contact, with Jane.  The record reveals that Monebrake had long-harbored incestuous fantasies about engaging in sexual behaviors with his children.  In the days leading up to the camping trip, Monebrake made suggestions about incestuous "real play" and expressed

---

4. The defendant claimed that he was helping toilet train the children.  *Id.* at ¶ 13.  However, the child's father testified that the child was capable of using his training toilet independently, the training toilet was undisturbed in the location it was stored, and it was apparent that the toilet had not been used.  *Id.*

his desire for Alice to perform oral sex on their children and for him to perform oral sex on Jane. During the drive to the campground, Monebrake told Alice about his plans to involve the children in sexual activities that would constitute rape or gross sexual imposition if completed.

{¶26} Monebrake then acted on those thoughts and plans. Alice testified that she and Monebrake were having sex on the first night of the camping trip. At some point, Monebrake got up and went over to Jane's side of the tent to unzip the door separating them. While Jane was still asleep, Monebrake physically removed Alice from their bed and placed her at the edge of Jane's bed. Monebrake, who was unclothed and had an erect penis, then began penetrating Alice from behind as he instructed her to touch Jane. When Alice refused, Monebrake allowed Alice to return to bed. He then zipped the door shut and finished having sexual intercourse with Alice.

{¶27} Monebrake's behavior throughout that weekend further corroborates his intention to transition from "role play" to "real play." Alice testified that Monebrake badgered her about having both sexual contact and sexual conduct with the children. Alice stated that Monebrake asked her several times if she was going to "do it." Moneybrake told her that he wanted to see her lick Jane's vagina.

{¶28} On appeal, Monebrake argues there was insufficient evidence that he took a substantial step toward committing rape or gross sexual imposition against Jane. However, we find Monebrake's argument is without merit. As noted above, sexual conduct, includes digital penetration and cunnilingus. Sexual contact includes the touching of a vagina for the purpose of sexual arousal or gratification. Monebrake went far beyond simply talking or fantasizing about his ideas for incestuous sexual relations. Monebrake planned his opportunity and tried to act on his desires. Monebrake's words and actions, in an attempt

to fulfill his plans, constituted a substantial step in the commission of attempted rape and attempted gross sexual imposition.

{¶29} Monebrake later admitted his intentions to Captain Hatfield. Monebrake told Captain Hatfield that he planned to have Alice penetrate Jane's vagina with her finger and that he would perform oral sex on Jane. In addition, Alice testified that Monebrake repeatedly told her to touch or lick Jane's vagina. Based on the record here, the trier of fact could reasonably conclude beyond a reasonable doubt that Monebrake committed the offenses of attempted rape and attempted gross sexual imposition. Monebrake's two assignments of error are without merit and hereby overruled.

{¶30} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.