[Cite as *State v. Clowers*, 2019-Ohio-4629.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-01-009 |
| Appellee, | : | O P I N I O N<br>11/12/2019 |
| | : | |
| - vs - | : | |
| | : | |
| ROBERT A. CLOWERS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018CR000054


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, Batavia, Ohio 45013, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Robert A. Clowers, appeals his convictions and sentences from the Clermont County Court of Common Pleas for felonious assault and kidnapping. For the reasons stated below, we affirm his conviction and sentence.

{¶ 2} On the evening of January 7, 2018, appellant asked his pregnant girlfriend

(the "victim") to go for a drive with him so that they could talk. The victim agreed. The victim had run errands earlier in the day, including retrieving documents from her estranged husband so that she could get an identification card.

{¶ 3} As arranged, appellant picked up the victim and began driving through the back roads of Clermont County. Eventually, appellant stopped the vehicle at the cemetery in East Fork State Park. The conversation turned heated as appellant demanded to know why the victim had gone to see her husband. During the conversation, appellant got out of the vehicle and retrieved something from the trunk. Appellant then returned to sit in the vehicle's driver's seat and placed whatever he had taken from the trunk into the back seat or back floorboard area of the car.

{¶ 4} After returning to the car, appellant and the victim continued to converse. During this exchange, appellant told the victim that she was going to die that night. Initially, the victim did not believe the threats, however, appellant placed his hands around her throat and began strangling her. The strangulation lasted for nearly thirty seconds before the victim was able to push appellant off her. At some point, appellant explained that he was going to kill her and then bury her in the cemetery. The victim asked for appellant to stop and take her home, but appellant refused. Around this time, appellant also told her that he was going to cut off her head.

{¶ 5} Subsequently, appellant reached behind the front seats and grabbed a roofing hammer.[1] Appellant then brandished the roofing hammer and forced its blade towards the victim's neck. Fortunately, the victim was in a defensive position with her knees raised up to protect her stomach and her hands positioned to block the incoming blade. Summoning

---

1. This implement was referred to at trial as an axe. The parties refer to it as a hatchet in their briefs. A photograph of the implement admitted into evidence depicts a hammer-like item with a two-sided head consisting of a blade and hammer. As the victim testified that appellant was a roofer, we will refer to the implement as a "roofing hammer."

all her strength, the victim again managed to force appellant and the weapon away from her, but not before she felt the weapon graze her neck. During these events, the victim attempted to flee the vehicle only to be pulled back into the car by appellant grabbing her hair.

{¶ 6} In one of the lulls in appellant's attacks, appellant ordered the victim to call her husband to tell the husband she was going to die. The victim instead gave appellant the telephone number of a mutual friend. Appellant called this person and told the friend that he was going to kill the victim. Appellant then declared that he was going to crash the car in another effort to kill them both. Appellant began driving around the parking lot in tight circles, colloquially known as a "doughnut" maneuver, before heading out to the main road. As the vehicle slowed for a stop sign, the victim escaped from the vehicle and quickly put distance between herself and appellant.

{¶ 7} Another motorist saw the victim as she exited from appellant's vehicle. He initially thought there was an altercation between appellant's vehicle and the vehicle behind them, but after seeing the victim move past the second vehicle, he decided it was something else entirely and offered his assistance to the victim. About the time that he contacted the victim, appellant pulled alongside the motorist's vehicle and briefly exclaimed that he could not stay because his car was overheating. Appellant then drove away. The motorist called 911.

{¶ 8} A deputy from the Clermont County Sheriff's Office arrived on scene and began talking to the victim and the motorist. Based on the information from the victim, the deputy transmitted a description of the vehicle and appellant to other law enforcement personnel. Another deputy found appellant's car crashed in a ditch some distance away. Deputies searched the vehicle and found a roofing hammer in the backseat. The deputies then unsuccessfully searched the area for appellant with a canine team. The deputies were

- 3 -

eventually able to locate appellant less than a mile away from the crashed vehicle at a family member's house.

{¶ 9} Based on the foregoing events, a Clermont County Grand Jury indicted appellant for: kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(3); felonious assault by means of a deadly weapon, a second-degree felony in violation of R.C. 2903.11(A)(2); and failure to stop after an accident involving the property of others, a first-degree misdemeanor in violation of R.C. 4549.03(A).

{¶ 10} Appellant waived his right to a jury and the case proceeded to a bench trial. At trial, the prosecution dismissed the R.C. 4549.03(A) failure to stop charge. For its case--in-chief, the prosecution's evidence included: the testimonies of the victim, the good Samaritan motorist, and responding law enforcement officers; the roofing hammer; photographs of appellant's car; and jailhouse telephone calls between the victim and appellant. After trial, the court found appellant guilty of both the kidnapping and felonious assault offenses. The trial court rejected appellant's request to merge these offenses, deciding they were not allied offenses of similar import. The trial court subsequently sentenced appellant to six years in prison for the kidnapping offense and four years in prison for the felonious assault offense, with the sentences to run consecutively. The trial court further notified appellant that he was subject to five years of postrelease control for the kidnapping offense and three years of postrelease control for the felonious assault offense.

{¶ 11} Appellant now appeals, raising four assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO GRANT DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} In the first and second assignments of error, appellant argues that the trial court erred by denying his Crim.R. 29 motion at trial and that his felonious assault conviction was against the manifest weight of the evidence. Specifically, appellant asserts there was insufficient evidence to convict him of felonious assault because the prosecution failed to prove that appellant either caused or attempted to cause physical harm to the victim. In support, appellant contends that his actions did "not support the conclusion that he intended to physically harm" the victim. Appellee conceded in its brief that the prosecution did not provide evidence of physical harm suffered by the victim. Regarding the manifest weight challenge, appellant claims that the prosecution did not meet its burden of persuasion to convict him of felonious assault because the evidence only showed that appellant's conduct intended to terrorize the victim, not cause harm. Consequently, the issue before this court is whether the prosecution met its burdens of production and persuasion to prove appellant attempted to cause physical harm to the victim.

{¶ 17} Pursuant to Crim.R. 29(A), "the court * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." The standard of review for a denial of a Crim.R. 29 motion is same standard used for review of a sufficiency of the evidence challenge. *State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 21. The "test for sufficiency requires a determination as to whether the prosecution has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. Therefore, the reviewing court must examine the evidence

- 5 -

produced at trial to determine whether any rational trier of fact could have found the essentials elements of the crime proven beyond a reasonable doubt, after viewing the evidence in a light most favorable to the prosecution. *State v. Watson*, 12th Dist. Butler No. CA2016-07-138, 2017-Ohio-1402, ¶ 10.

{¶ 18} On the other hand, a manifest weight of the evidence challenge examines the inclination of the greater amount of credible evidence to support one side over the other. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. On review, the appellate court must

> look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 26. On a manifest weight of the evidence review, an appellate court will overturn a conviction only in an extraordinary circumstance, to correct a manifest injustice, where the evidence weighs heavily in favor of acquittal. *State v. Barnes,* 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The determination that a conviction is supported by the manifest weight of the evidence will be dispositive of the sufficiency of the evidence issue. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 19} To convict appellant of felonious assault, the prosecution had to prove appellant knowingly caused or *attempted to cause* physical harm to the victim or her unborn by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). Therefore, the prosecution had to show appellant acted knowingly in attempting to cause physical harm to another by use of a deadly weapon. Knowingly is defined as "regardless of purpose, when

the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶ 20} An attempt occurs when a person engages in conduct that, if successful, would constitute or result in the offense and that offense required a culpable mental state of either purposely or knowingly. R.C. 2923.02(A). To establish that an attempt has occurred, the prosecution must prove the offender took a substantial step in perpetrating the crime. *State v. Curtis*, 12th Dist. Butler No. CA2008-01-008, 2009-Ohio-192, ¶ 16. A substantial step is an act that is strongly corroborative of the actor's criminal purpose. *State v. McCrone,* 12th Dist. Warren No. CA2018-01-007, 2019-Ohio-337, ¶ 38. In addressing the attempt element within felonious assault, the Ohio Supreme Court held that showing a defendant's act of pointing a deadly weapon at a person in conjunction with the defendant making a direct threat to use that weapon, is sufficient evidence to prove felonious assault. *State v. Green*, 58 Ohio St.3d 239, 241 (1991).

{¶ 21} After review of the record, we find that the evidence produced at trial is sufficient to convict appellant of felonious assault, because appellant's actions constituted a substantial step in knowingly causing physical harm to the victim using a deadly weapon. Appellant's conviction for this offense was not against the manifest weight of the evidence.

{¶ 22} Appellant does not contest the fact that the roofing hammer is a deadly weapon. We find that it is a deadly weapon as it is an instrument capable of inflicting death and was used as a weapon against the victim.

{¶ 23} The victim testified that appellant told her that he was going to kill her and cut

off her head. While the victim acknowledged that she did not initially believe the death threats, she testified that her disbelief dissipated when appellant began his first attack by strangling her with his bare hands. After that initial attack, appellant reached for the roofing hammer and pushed its bladed edge towards the victim's neck. A struggle ensued between the victim and appellant as she tried to keep the blade away from her. During the struggle, the victim felt the weapon graze, but not cut, her neck.

{¶ 24} This court finds that appellant's actions with the weapon constituted a substantial step in perpetrating felonious assault. Appellant's efforts to use a bladed implement against the victim is itself sufficient evidence to withstand a Crim. R. 29 motion for acquittal and support a conviction for felonious assault. However, should the attack with the roofing hammer require context, it was preceded and followed by death threats and a prior attempt to strangle the victim. The threats and repeated attacks demonstrate that appellant knowingly used the weapon in an attempt to cause physical harm.

{¶ 25} Consequently, after viewing the evidence in the light most favorable to the prosecution, we find any reasonable trier of fact could have found all the essential elements of the crime proven beyond a reasonable doubt. Likewise, this is not a case where the evidence weighs heavily in favor of acquittal. The trial court, as finder of fact, did not clearly lose its way and create a manifest miscarriage of justice finding appellant guilty of the felonious assault. The evidence was sufficient to find appellant guilty and his conviction for felonious assault is not against the manifest weight of the evidence.

{¶ 26} Accordingly, appellant's first and second assignments of error are overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT MERGING

FELONIOUS ASSAULT AND KIDNAPPING.[2]

{¶ 29} In the third assignment of error, appellant argues that the trial court erred by not merging the kidnapping offense with the felonious assault offense. Appellant asserts that the offenses did not involve separate harms, were not committed with a separate animus as to each, and were not committed separately, i.e. in separate transactions.

{¶ 30} The United States and Ohio Constitutions prohibit the government from subjecting a person to multiple punishments for the same offense. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10. This protection is codified in R.C. 2941.25, which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Therefore, pursuant to R.C. 2941.25, a defendant may be convicted of multiple offenses arising out of an episode of criminal conduct if: 1) the offenses did not have the same import, i.e. the offenses created separate, identifiable harms; 2) the offenses were committed separately; or 3) there was a separate animus or motivation in committing the offenses. *Ruff* at ¶ 25. Accordingly, the critical inquiry for R.C. 2941.25 is the conduct of the defendant. *Id.* at ¶ 26. If the multiple offenses were perpetrated against a single victim, the defendant may be convicted of the different offenses if the victim suffers separate and identifiable harm from the different offenses. *Id.* Moreover, this court has previously held

---

2. While appellant uses the term "plain error" for this assigned error, appellant properly raised this matter at the trial level prior to sentencing. Therefore, this court will examine the assignment of error under the de novo standard of review as discussed herein.

that if one offense is completed before the other begins, then "the offenses are considered separately for sentencing purposes even though the two offenses may have been committed in close proximity in time." *State v. Fields*, 12th Dist. Clermont No. CA2014-03-025, 2015-Ohio-1345, ¶ 18.

{¶ 31} As charged, the kidnapping offense prohibited conduct that removes another person from the place where that person is found or restrains the liberty of that person by force, threat or deception, for the purpose of terrorizing or inflicting serious physical harm on that person. R.C. 2905.01(A)(3). In *State v. Logan*, 60 Ohio St.2d 126 (1979), the Ohio Supreme Court examined the offense of kidnapping as it relates to other offenses that occur during a single criminal episode. The *Logan* court explained that R.C. 2941.25 was enacted because "in many cases a single criminal act could constitute two or more similar crimes." *Id.* at 130. Therefore, when determining whether kidnapping and another criminal offense should merge, the *Logan* court established the following guidelines to examine the defendant's animus:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at the syllabus.

{¶ 32} It is the appellant's burden to establish entitlement to R.C.2941.25 protection against multiple punishments. *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-

Ohio-885, ¶ 14. An appellate court reviews de novo the trial's court R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶ 33} Here, appellant has failed to establish that he is entitled to have his offenses merged under R.C. 2941.25. The record demonstrates that each offense involved separate conduct, a separate animus, and a separate harm.

{¶ 34} Appellant's assault with the deadly weapon ended when the victim successfully fought him off. Thereafter, appellant extended his restraint of the victim in the vehicle, doing doughnuts around the cemetery parking lot and driving away to facilitate a different method to inflict harm upon the victim. Thus, the kidnapping offense extended far beyond what was necessary for the appellant to commit the felonious assault and involved not only separate conduct but also a separate animus.

{¶ 35} Furthermore, the record demonstrates that the victim suffered different harms from the offenses. The failed attack with the hammer was to cause physical harm. The kidnapping offense, including the erratic driving and threat to intentionally wreck the vehicle, subjected the victim to prolonged loss of liberty completely separate from that involved in the felonious assault.

{¶ 36} Therefore, the kidnapping and felonious assault are not allied offenses of similar import and not subject to merger. Accordingly, the trial court did not err when it convicted appellant for the two offenses. Appellant's third assignment of error is overruled.

{¶ 37} Assignment of Error No. 4:

{¶ 38} THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE PRISON TERMS.

{¶ 39} In the fourth assignment of error, appellant argues that the trial court erred by imposing consecutive prison sentences because consecutive service was not supported by the record. Appellant concedes that the trial court made the statutorily required findings,

however, he argues that the criminal conduct for which he is being punished was one transaction that lasted only a short time and therefore the imposition of consecutive sentences was "disproportionate and excessive."

{¶ 40} An appellate court reviews felony sentences according to the standard of review set forth in R.C. 2953.08(G)(2). *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to R.C. 2953.08(G)(2), "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.

{¶ 41} R.C. 2929.14(C)(4) sets forth the requirements to impose consecutive service of multiple sentences. Pursuant to this statute, the trial court must engage in a three-step analysis, *State v. Smith*, 12th Dist. Clermont No. CA2014-07-054, 2015-Ohio-1093, ¶ 7, and then make three findings at the sentencing hearing and incorporate those findings in the judgment entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37. Specifically, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender" and second, "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Third, the trial court must find that one of the following provisions applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or

unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c). When making these findings, the trial court is not required to invoke a "talismanic incantation" of the words of the statute, nor is it required to state the reasons supporting its findings. *Bonnell* at ¶ 37. Nevertheless, a sentence is contrary to law where the trial court fails to make the requisite findings pursuant to R.C. 2929.14(C)(4), *State v. Burns*, 12th Dist. Clermont No. CA2018-03-015, 2018-Ohio-4657, ¶ 14, or when the sentence is outside the statutory range. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 42} Here, appellant has failed to show by clear and convincing evidence how the trial court's findings were unsupported by the record. At the sentencing hearing, based on a presentence-investigative report, the trial court found that appellant had a lengthy criminal history, including several felony convictions, and had previously served time in prison. His prior convictions included offenses of violence and substance abuse. In making its consecutive sentence findings, the trial court stated:

> And in imposing consecutive sentences, I will make the following findings: consecutive sentences are necessary to protect the public from future crime and to punish the defendant. They are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. These are two offenses and I analyzed the difference in the offenses in terms of the decision I entered this morning on this issue of merger. The harm caused by the multiple offenses is so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct and his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant. This is a situation where somebody has—you can affect the course of the rest of your life by what you do that is

terrible in a single moment of time. In this case, as [the prosecutor] said, it took—it was about an hour of time.

Consequently, the record shows that the trial court engaged in the proper analysis. As indicated from the above statement, the trial court specifically addressed the fact that the criminal act was a significant event for the victim that caused a terrible result despite only occurring for a "single moment." Furthermore, the trial court made four findings as to why consecutive sentences were necessary, specifying that the course of conduct caused great or unusual harm and appellant has a history of criminal conduct. While the trial court did not repeat the specific findings of fact it made during the guilt phase, it referenced those findings as part of its decision for the sentences.

{¶ 43} The trial court also referred to the principles and purposes of sentencing pursuant to R.C. 2929.11 and made findings as to the seriousness and recidivism factors in R.C. 2929.12. Finally, the sentences imposed are within the statutorily permitted range and the trial court properly incorporated its consecutive sentence findings in the judgment entry. Therefore, based on our review of the record, the trial court did not err ordering the sentences to run consecutively.

{¶ 44} Accordingly, appellant's fourth assignment of error is overruled.

{¶ 45} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.