[Cite as *State v. Herzner*, 2021-Ohio-4244.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-02-005 |
| | : | O P I N I O N |
| - vs - | | 12/6/2021 |
| | : | |
| JUSTIN W. HERZNER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020CR0360


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.


**BYRNE, J.**

{¶ 1} Defendant-appellant, Justin W. Herzner, appeals from his conviction in the Clermont County Court of Common Pleas with respect to the court's failure to merge his convictions for domestic violence and abduction as allied offenses. For the reasons stated below, we affirm.

## I. Facts

{¶ 2}  Herzner and the victim, Cheyanne Vollmer, were engaged and had four children in common.  Between the late evening of April 27 and early morning of April 28, 2020, police were dispatched to a residence in Goshen Township to respond to a verbal altercation between Herzner and Vollmer.  After the officers departed, Vollmer went to sleep.  She awoke to Herzner having wrapped a nylon rope around her neck.  Vollmer struggled to free herself as Herzner tightened the rope.  Vollmer was eventually able to slide the rope off of her neck and into her mouth.  This caused lacerations to her cheeks.  When Herzner finally let go, Vollmer attempted to exit the room, but was stopped by Herzner, who grabbed her, threw her to the floor, and told her he had a knife.  Herzner shut the door, leaving Vollmer alone in a room with boarded-up windows and no escape other than through the hall where Herzner waited, armed with a knife.

{¶ 3}  Thirty minutes later, an irate Herzner reentered the room where Vollmer was trapped.  Shouting that she had lied to him, he climbed on top of her, punched her in the face repeatedly, and choked her with his hands to the point that she lost consciousness.  When Vollmer awoke, she was coughing up her own blood.  At some point she was finally able to flee and went to the Goshen Township Police Department to report the incident.  Herzner was arrested soon thereafter.

## II. Procedural Posture

{¶ 4}  On June 2, 2020, a Clermont County Grand Jury indicted Herzner on one count of domestic violence in violation of R.C. 2919.25(A) and one count of kidnapping in violation of R.C. 2905.01(A)(3).  Herzner initially pleaded not guilty, but after negotiation with the state, and in exchange for the state amending the kidnapping count to abduction in violation of R.C. 2905.02(A)(2), Herzner entered a plea of guilty to the amended charges.  At the plea hearing the State provided a factual basis for the plea as follows:

PROSECUTOR: Specifically, on or about the 27th or 28th day of April 2020, in Clermont County, Ohio, defendant and the victim got into an altercation which required the police to respond. No arrests were made at the first incident. Then approximately an hour after the police responded, the defendant again hit and then choked the victim.

Defendant would not let the victim leave, and in doing so, wrapped a rope around her neck and threatened her. The victim was left with substantial bruising and visible injuries as a result. Defendant while incarcerated had another inmate and himself call victim's family in an attempt to get them not to come to court.

Defendant and victim had lived together and had four children in common. Defendant has multiple prior domestic violence convictions.

{¶ 5} Herzner did not object to the state's description of the facts. The court advised Herzner of his trial rights, and he agreed to waive them and accept the plea agreement. The court then found Herzner's plea was knowing, voluntary, and intelligent, accepted it, ordered a presentence investigation ("PSI"), and set the matter for sentencing.

{¶ 6} A week after the plea hearing, Herzner submitted a sentencing memorandum in support of merger, in which he argued that his conduct was all committed as a single act in a continuing course of conduct.

{¶ 7} At the sentencing hearing, the court considered Herzner's motion for merger of the offenses. The judge and attorneys spoke at length about the factual basis set forth by the state at the preceding hearing, the facts of the case as set forth in the police report and PSI, and whether the court should grant or deny the motion for merger. Eventually, the trial court permitted Vollmer to provide clarification as to the timeline of events through both sworn and unsworn testimony. After considering the evidence and the law, the court denied the merger motion. The judge asked Herzner whether he would like to withdraw his guilty plea in light of that finding, and after conferring with his attorney during a recess, Herzner declined to do so. The court sentenced Herzner to 30 months of incarceration on the

- 3 -

domestic violence count and 33 months of incarceration on the abduction count, to be served consecutively. Herzner now appeals.

### III. Law and Analysis

{¶ 8}   On appeal, Herzner raises one assignment of error:

{¶ 9}   DOMESTIC VIOLENCE AND ABDUCTION ARE ALLIED OFFENSES OF SIMILAR IMPORT UNDER R.C. 2941.25 AND THEREFORE SUBJECT TO MERGER.

{¶ 10} Herzner argues that his two convictions should have merged as allied offenses.   The United States and Ohio Constitutions prohibit the government from subjecting a person to multiple punishments for the same offense.  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10, citing Fifth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 10.   This protection has been codified in Ohio's allied-offenses statute, which prohibits the imposition of multiple punishments for the same criminal conduct.  *State v. Conrad*, 12th Dist. Butler No. CA2018-01-016, 2018-Ohio-5291, ¶ 43.  The allied offense statute provides:

> (A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B)   Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.   The prosecution selects the charges that may be brought against a defendant based upon the defendant's criminal conduct.  This same conduct may support convictions for multiple offenses, requiring the judge to determine, based on the facts of the case, whether the conduct can be "merged," or construed to constitute a single offense. *Ruff* at ¶ 13.  An appellate court reviews de novo the trial court's R.C. 2941.25 merger

determination. *State v. Clowers*, 12th Dist. Clermont No. CA2019-01-009, 2019-Ohio-4629, ¶ 32.

{¶ 11} In determining whether offenses are "allied" and should be merged for sentencing, courts are instructed to consider three separate factors: the conduct, the animus, and the import. *State v. Singh*, 12th Dist. Warren No. CA2020-09-056, 2021-Ohio-2158, ¶ 60, citing *Ruff* at syllabus. "[A] defendant may be convicted of multiple offenses arising out of an episode of criminal conduct if 1) the offenses did not have the same import, i.e., the offenses created separate, identifiable harms; 2) the offenses were committed separately; or 3) there was a separate animus or motivation in committing the offenses." *Clowers* at ¶ 30, citing *Ruff* at ¶ 25. Accordingly, the critical inquiry for an analysis under R.C. 2941.25 is the conduct of the defendant. *Id.*

{¶ 12} Herzner pleaded guilty to one count of domestic violence and one count of abduction. Under Ohio's domestic violence law, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). Per the statute, a "family or household member" means "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b). At the time of the incident, Herzner and Vollmer, who were engaged to be married, shared four biological children. Herzner choked and hit Vollmer repeatedly, including to the point where she lost consciousness. Herzner caused Vollmer physical harm. Herzner unquestionably committed domestic violence.

{¶ 13} Abduction is defined as, without privilege, "[b]y force or threat, restrain[ing] the liberty of another person under circumstances that create a risk of physical harm to the victim or plac[ing] the other person in fear." R.C. 2905.02(A)(2). Herzner choked Vollmer with a nylon rope, grabbed her and threw her to the floor when she tried to flee the room, threatened her with a knife, and left her alone in a room with boarded-up windows with no

escape other than through a hallway where he waited with a knife. Herzner unquestionably abducted Vollmer.

{¶ 14} The issue before us is whether Herzner's acts of domestic violence and abduction should merge into a single offense for purposes of sentencing. It is the appellant's burden to establish entitlement to R.C.2941.25 protection against multiple punishments. *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 15} Before analyzing the conduct, animus, and import of the offenses, we pause to address two issues. First, we note that Herzner argues that the facts described by the prosecutor at the plea hearing should control whether the offenses should merge. He asserts that the prosecutor's statement of the facts, if considered alone, was insufficient for the court to find the offenses were separate. We have previously rejected this argument. *Id.* at ¶ 21. "In considering the brief statement of facts read into the record at the plea hearing, we are mindful that a guilty plea is a complete admission of the defendant's guilt, and the merger of offenses is a sentencing issue, not a plea issue." *Id.* at ¶ 20. In *Lewis*, we explained that "[w]e need not rely solely on the statement of facts as laid out at the plea hearing as there were sufficient facts in the record to find" the offenses should not merge. *Id.* In that case we found that the trial court did not err in finding that two offenses did not merge when the court relied on facts offered by the state at the plea hearing and also on facts described in the pre-sentence investigation report that were read aloud at the sentencing hearing. *Id.* at ¶ 17-21. The defendant in that case was given the opportunity to correct the facts read from the pre-sentence investigation report and he declined to do so. *Id.* at ¶ 17.

{¶ 16} Likewise, here, at the sentencing hearing the trial court reviewed the facts described by the state at the plea hearing, Vollmer's testimony at the sentencing hearing, and other information in the record before it decided that Herzner's abduction and domestic

violence offenses should not merge. The trial court then gave Herzner the opportunity to withdraw his plea and after conferring with his counsel during a recess, Herzner decided not to do so. Therefore, we proceed with our analysis using the facts as revealed by the entire record. *State v. Washington*, 137 Ohio St. 3d 427, 2013-Ohio-4982, ¶ 20, 24 ("We hold that when deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus.").

{¶ 17} Second, we note that the trial court indicated at the sentencing hearing that Herzner's acts towards Vollmer before he left the bedroom could have been charged as either abduction or domestic violence, and likewise Herzner's acts towards Vollmer after he returned to the bedroom could have been charged as either abduction or domestic violence. However, the state only charged Herzner with one count of kidnapping (later pleaded down to abduction) and one count of domestic violence, rather than two counts of each. The trial court appears to have concluded that Herzner's acts before leaving the bedroom constituted the offense of abduction, and Herzner's acts after returning to the bedroom constituted the offense of domestic violence. We will analyze this case in the same manner.

## A. Import

{¶ 18} "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Ruff* at ¶ 26. If multiple offenses were perpetrated against a single victim, the defendant may be convicted of the different offenses if the victim suffers separate and identifiable harm from the different offenses. *Clowers*, 2019-Ohio-4629 at ¶ 30, citing *Ruff* at ¶ 26. Based on the evidence presented at the plea and sentencing hearings, we find that Herzner's domestic violence and abduction offenses were of dissimilar import.

{¶ 19} The harms from Herzner's abduction and domestic violence offenses were separate and identifiable. The harm from Herzner's abduction of Vollmer was fear. *See* R.C. 2905.02(A)(2). When Herzner grabbed Vollmer, threw her back into the room as she tried to escape, and threatened her with a knife, he placed her in fear. The context of her confinement, coming immediately after he choked her with a rope, served only to heighten Vollmer's fear for her life. Conversely, the harm from Herzner's domestic violence offense was severe physical injury to Vollmer, which resulted in heavy bruising, scarring, loss of consciousness, and blood loss. The harm from the offenses was therefore of dissimilar import, meaning the offenses should not merge. *Clowers* at ¶ 30, citing *Ruff* at ¶ 25.

## B. Harms

{¶ 20} We have previously held that if one offense is completed before the other begins, then "the offenses are considered separately for sentencing purposes even though the two offenses may have been committed in close proximity in time." *Clowers* at ¶ 30, citing *State v. Fields*, 12th Dist. Clermont No. CA2014-03-025, 2015-Ohio-1345, ¶ 18. The facts of this case indicate that the abduction and domestic violence offenses were committed separately, and that the abduction was not incidental to the domestic violence as Herzner argues. Although the prosecutor's statement of facts offered at the plea hearing was not as clear as it could have been on this point, we nevertheless find, based on all of the facts available in the record, including Vollmer's testimony at the sentencing hearing, a sufficient basis to identify the two offenses as separate.

{¶ 21} When Herzner grabbed Vollmer as she tried to leave, threw her back in the room, threatened her with a knife, and shut her into the room with no escape, the abduction offense was complete. In restraining her liberty in this manner, particularly after having just choked her with a rope, Herzner created a risk of physical harm to Vollmer or placed her in fear. Further, Herzner's second attack on Vollmer, separated as it was by thirty minutes

from the initial incident, constitutes a wholly separate offense. Even if Herzner's choking Vollmer with rope is viewed as incidental to the abduction, his punching and choking her with his hands was completely separate in time from the acts which constituted the abduction. The offenses thus should not merge. *Clowers* at ¶ 30, citing *Ruff* at ¶ 25.

### C. Animus

{¶ 22} "Animus" is defined for purposes of R.C. 2941.25(B) as "purpose" or "more properly, immediate motive." *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 12. "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." *Id.*, citing *Lewis*, 2012-Ohio-885 at ¶ 13. Animus is often difficult to prove directly but must be inferred from the surrounding circumstances. *Id.*, citing *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). Herzner argues that the motive behind both the domestic violence and abduction offenses was identical, namely, to physically harm Vollmer. While it is true that this was a common result, the surrounding circumstances bear out a separate animus for each offense.

{¶ 23} The separate animus is principally demonstrated by the gap in time between the completion of the abduction and the completion of the domestic violence offense as detailed above. *See, e.g., State v. Painter*, 12th Dist. Clermont No. CA2014-03-022, 2014-Ohio-5011, ¶ 22. Herzner left the room where he was confining Vollmer and returned thirty minutes later, shouting about how she had lied to him. This was not a continuous chain of events—a "domestic violence incident of 30-minutes duration" as Herzner classifies it—but rather an attack and confinement followed by a separate attack. The gap in time between Herzner's initial attack and confinement of Vollmer and his final attack upon her suggests a different animus and means the offenses should not merge. *Clowers* at ¶ 30, citing *Ruff* at ¶ 25.

## IV. Conclusion

{¶ 24} After reviewing the record, we find that the court did not err in determining that Herzner failed to carry his burden to demonstrate that his convictions for domestic violence and abduction were allied offenses that should be merged under R.C. 2941.25. The record demonstrates that each offense involved separate conduct, a separate animus, and a separate harm.

{¶ 25} Appellant's assignment of error is overruled.

{¶ 26} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.