[Cite as *State v. Vaughn*, 2019-Ohio-5005.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-18-1142

     Appellee                                   Trial Court No. CR0201801236

v.

Cameron Winston Vaughn                    **DECISION AND JUDGMENT**

     Appellant                                   Decided:  December 6, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Clayton M. Gerbitz, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Cameron Vaughn, appeals the June 1, 2018 judgment of the

Lucas County Court of Common Pleas sentencing him to 10 years in prison.  For the

following reasons, we affirm.

## I. Background and Facts

{¶ 2} In February 2018, Vaughn was indicted on nine charges: two counts of rape in violation of R.C. 2907.02(A)(2), both first-degree felonies; two counts of sexual battery in violation of R.C. 2907.03(A)(1), both third-degree felonies; two counts of extortion in violation of R.C. 2905.11(A)(5), both third-degree felonies; two counts of coercion in violation of R.C. 2905.12(A)(3), both second-degree misdemeanors; and one count of kidnapping in violation of R.C. 2905.01(A)(4), a first-degree felony.

{¶ 3} Vaughn agreed to plead guilty to the sexual battery and extortion charges pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

{¶ 4} At the plea hearing, the state explained the circumstances of the crimes. According to the state, in 2016, the victim, C.B., who was in high school at the time, began communicating on the Snapchat app with a person called "MaKahla." C.B. believed that he was communicating with a woman based on his conversations with MaKahla and the pictures that MaKahla sent. Later, after C.B. was out of high school, MaKahla told C.B. that she would have sex with him, but only if he first had sex with MaKahla's boyfriend. C.B. agreed and met with the "boyfriend," who was actually Vaughn, in the parking lot of a church in Sylvania. After C.B. got into Vaughn's car, Vaughn made sexual advances toward C.B. C.B. "said he could not do it" and exited Vaughn's vehicle. MaKahla later messaged C.B. to ask why C.B. did not have sex with her boyfriend.

2.

{¶ 5} In addition to communicating through Snapchat, C.B. and MaKahla were also communicating through the Kik app. Through Kik, MaKahla asked C.B. to send her pictures of his penis and videos of him digitally penetrating and inserting objects into his anus. He did. After receiving the pictures and videos, MaKahla told C.B. that her boyfriend had found the images and was upset. MaKahla said that her boyfriend wanted to have sex with C.B. "as revenge." If C.B. did not, MaKahla claimed that her boyfriend would post the images "all over social media in an effort to embarrass [C.B.]." C.B. agreed.

{¶ 6} C.B. went to a home in Toledo, and when he pulled up, he saw, through the front window, a black man on his phone sending messages. At this point, the state said that it believed Vaughn was posing as MaKahla because C.B. received messages from MaKahla asking if he had arrived at the same time that the man in the home (who C.B. later identified as Vaughn) was sending messages. Vaughn had anal sex with C.B. at the home.

{¶ 7} Afterward, MaKahla sent C.B. another message stating that her boyfriend still intended to put the images of C.B. on social media unless C.B. had sex with her boyfriend again. Although C.B. pleaded with MaKahla not to release the images, she said it would happen unless C.B. had sex with her boyfriend. So C.B. reluctantly agreed.

{¶ 8} C.B.'s third meeting with Vaughn occurred in a store parking lot in Holland. Once C.B. was in Vaughn's car, Vaughn had C.B. turn off the location services on his phone so he could not be tracked, blindfolded him, and drove him to an apartment in

3.

Maumee. At the apartment, Vaughn performed fellatio on C.B. and had anal sex with C.B. He also asked C.B. to perform fellatio on him, but C.B. refused.

{¶ 9} Following this incident, MaKahla again told C.B. that his images would be released on social media unless C.B. had sex with the boyfriend a third time. This time, however, C.B. refused. Instead, he wrote a letter to his family about what had happened, which led to the Sylvania Police Department becoming involved.

{¶ 10} The officer who investigated was able to trace the IP addresses associated with the Snapchat and Kik messages to Vaughn. The state concluded that Vaughn had been posing as MaKahla the whole time in an effort to engage in sexual conduct with C.B.

{¶ 11} Vaughn was indicted on several counts of rape, sexual battery, extortion, and coercion, and one count of kidnapping. He pleaded guilty to the sexual battery and extortion charges pursuant to *Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, and the state dismissed the remaining charges.

{¶ 12} The trial court accepted Vaughn's *Alford* pleas and found him guilty of all charges. The court ordered a presentence investigation and, at defense counsel's request, a psychological evaluation.

{¶ 13} At the sentencing hearing, Vaughn's attorney addressed the court. Counsel explained that Vaughn was a typical 20 year old who "made a very very [sic] big mistake." Vaughn was "struggling and confused with his own sexuality * * *," which led

4.

him to in engage in "cat fishing [sic]" behavior.[1]  Vaughn believed that he was "role playing" with the victim and "in his mind and in his heart he believed that this was a game."  Counsel also noted that Vaughn was a "polite, articulate, intelligent young man," and asked the court to run the sentences concurrently.

{¶ 14} Vaughn also addressed the court.  He said that he "should have never pretended to be someone else" and took "full responsibility" for doing so.  He also assured the court that "nothing like this will ever happen again."

{¶ 15} Following Vaughn's statement, the court said that it "considered the record, oral statements, victim impact statement, and the pre-sentence report * * *," it considered the principles and purposes of sentencing under R.C. 2929.11, balanced the seriousness and recidivism factors in R.C. 2929.12, and considered the factors in R.C. 2929.13(B). The court discounted Vaughn's and counsel's explanations for Vaughn's behavior, saying

> [T]he term was used as cat fishing [sic], and that's just a comfortable word by our culture for some reason in this modern way of communicating not to denigrate a conduct but to make it sound like it was very nice.

---

[1] "Catfishing" means "deceiv[ing] (someone) by creating a false personal profile online," Merriam-Webster Online, *catfish*, https://www.merriam-webster.com/dictionary/catfish (accessed Nov. 4, 2019), or "Lur[ing] (someone) into a relationship by means of a fictional online persona." Lexico, *catfish*, https://www.lexico.com/en/definition/catfish (accessed Nov. 4, 2019).

5.

It is actually a highly dangerous conduct, and it is a form of terrorization, so cat fishing [sic] that leads to this is nothing more than cunning, predatory, calculating, and manipulated.

The damage meted out in this situation to the victim is immeasurable. The Court cannot begin to accept any kind of an explanation that this was any kind of an innocence of a situation.

I understand maybe you proclaimed naivety on this, however the conduct that was used and to follow through with the very specific acts of the conduct is nothing less than cunning and terrorizing, and this will not be tolerated.

The court ordered Vaughn to serve 42 months in prison for each sexual battery count and 18 months for each extortion count, with the sentences to be served consecutively, for an aggregate prison term of 10 years. The court found that consecutive sentences were necessary to protect the public from future crime and to punish Vaughn, were not disproportionate to the "extreme seriousness" of Vaughn's conduct and the danger Vaughn posed to the community, and were necessary because the harm Vaughn caused was "so grave or unusual" that a single prison term would not adequately reflect the seriousness of Vaughn's conduct.

{¶ 16} Despite the trial court ordering a psychological evaluation, neither the court nor counsel referred to the evaluation at the sentencing hearing. Nor was a psychological evaluation report filed with the clerk of courts. The court's file contains a letter, dated six

6.

days before Vaughn's sentencing hearing, from Court Diagnostic & Treatment Center indicating that Vaughn appeared for his evaluation, but after the evaluator "discuss[ed] the nature and privilege of the evaluation" with Vaughn, Vaughn "thought it best to speak with his attorney before proceeding." Based on the record, it does not appear that Vaughn actually underwent a psychological evaluation.

{¶ 17} Vaughn now appeals the trial court's sentence, raising two assignments of error:

I. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO MERGE THE EXTORTION CHARGES WITH THE SEXUAL BATTERY CHARGES AT SENTENCING.

II. THE TRIAL COURT ERRED WHEN SENTENCING APPELLANT WITHOUT CONSIDERING THE PSYCHOLOGICAL EVALUATION OR MAKING IT AVAILABLE TO THE APPELLANT.

## II. Law and Analysis

### A. Allied Offenses

{¶ 18} In his first assignment of error, Vaughn argues that the trial court committed plain error by failing to merge the sexual battery counts with the extortion counts because "the Extortion charges are actually elements of the Sexual Battery charges." He contends that the offenses are allied offenses of similar import because the conduct constituting extortion (i.e., Vaughn threating to expose sexual images of C.B. on social media) was the same conduct constituting the coercion necessary to prove sexual

battery. The state responds that the offenses do not merge because they caused separate and identifiable harm, were committed separately, or were committed with separate animus.

{¶ 19} We review de novo a trial court's ruling as to whether convictions merge under the allied-offenses doctrine. *State v. Roberson*, 2018-Ohio-1955, 113 N.E.3d 204, ¶ 12 (6th Dist.). Vaughn, however, did not raise the issue of allied offenses of similar import in the trial court. Our review of this issue on appeal is therefore limited to plain error. *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Vaughn must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus," and "absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶ 20} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The right against double jeopardy is also guaranteed by the Ohio Constitution, Article I, Section 10 ("No person shall be twice put in jeopardy for the same offense."). "The protection provided by the Ohio Constitution's Double Jeopardy Clause is coextensive with that provided by the Double

8.

Jeopardy Clause of the United States Constitution." *Clark v. Adult Parole Auth.*, 151 Ohio St.3d 522, 2017-Ohio-8391, 90 N.E.3d 909, ¶ 13.

{¶ 21} The Double Jeopardy Clause "protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

{¶ 22} R.C. 2941.25 codifies the Double Jeopardy Clause's third protection, which prohibits multiple punishments for the same offense. The statute prohibits multiple convictions for "allied offenses of similar import" arising out of the same conduct. R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

9.

**{¶ 23}** "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26. This means that the "'analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52.

**{¶ 24}** In *Ruff,* the Supreme Court of Ohio announced that whenever a court considers whether there are allied offenses that merge into a single conviction, the court "must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Id.* at ¶ 25. When considering this overarching question, the court must address three sub-questions: (1) Were the offenses "dissimilar in import," meaning did the offenses involve either separate victims or "separate and identifiable" harm? (2) Were the offenses committed separately? and (3) Were the offenses committed with separate animus? *Id.* at ¶ 23-25. "'An affirmative answer to *any* of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.'" (Emphasis added.) *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *Ruff* at ¶ 31. The defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

10.

{¶ 25} Under the *Ruff* test*,* we first address whether the sexual battery and extortion offenses were "dissimilar in import"—i.e., whether the offenses involved separate victims or "separate and identifiable" harm. Here, the offenses undoubtedly involved the same victim, so our inquiry becomes whether they resulted in separate and identifiable harms.

{¶ 26} Vaughn was convicted of sexual battery in violation of R.C. 2907.03(A)(1) and extortion in violation of R.C. 2905.11(A)(5).

{¶ 27} Under the relevant sexual battery statute, R.C. 2907.03(A)(1), it is illegal for any person to engage in sexual conduct with another who is not the person's spouse when the person knowingly coerces the other "to submit by any means that would prevent resistance by a person of ordinary resolution." "Sexual conduct" means, among other things, "anal intercourse [or] fellatio * * * between persons regardless of sex * * *." R.C. 2907.01(A).

{¶ 28} An extortion conviction under R.C. 2905.11(A)(5) requires the state to prove that the defendant, "with purpose to obtain any valuable thing or valuable benefit * * *," exposed or threatened to expose "any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal * * * repute * * *."

{¶ 29} Contrary to Vaughn's argument, the harm caused by sexual battery is not the coercion used to compel the victim's compliance; instead, the harm is participation in sexual conduct against the victim's will. "'[A]s a matter of law and common sense,'" forced sexual conduct causes "harm in the form of physical and mental trauma." *State v.*

11.

*Jackson*, 6th Dist. Lucas No. L-17-1228, 2019-Ohio-577, ¶ 26, quoting *State v. Dean*, 2018-Ohio-1740, 112 N.E.3d 32, ¶ 56 (6th Dist.). In contrast, as applicable in this case, extortion causes harm in the form of the victim's psychological distress that comes from knowing someone is likely to put sexual photos and videos of the victim on the internet where they would be available for millions of people to see. Thus, in this case, the sexual battery and extortion offenses resulted in at least two "separate and identifiable" harms: physical harm from unwanted sexual conduct and mental distress from threats to expose sensitive material. Accordingly, we find that Vaughn's convictions were offenses of dissimilar import.

{¶ 30} Given that we have answered the first prong of the *Ruff* test in the affirmative and determined that Vaughn's convictions were dissimilar in import, we need not address the remaining two elements of *Ruff*. *Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, at ¶ 12 ("'An affirmative answer to *any* of the [required questions under *Ruff*] will permit separate convictions.'" (Emphasis added.)). Therefore, we find that the trial court did not commit plain error by failing to merge Vaughn's sexual battery convictions with his extortion convictions. Accordingly, we find that Vaughn's first assignment of error is not well-taken.

## B. Psychological Evaluation

{¶ 31} In his second assignment of error, Vaughn argues that the trial court failed to consider the psychological evaluation report it ordered under R.C. 2947.06(B) and failed to comply with the statute because the court did not require the psychological

12.

evaluation report to be made in writing, in open court, and in Vaughn's presence. The state responds that nothing in the record shows that the trial court failed to consider the report or failed to comply with the requirements of R.C. 2947.06(B).

{¶ 32} Under R.C. 2947.06(B), a trial court has the discretion to appoint up to two psychiatrists or psychologists to "make any reports concerning the defendant that the court requires for the purpose of determining the disposition of the case." If a report is ordered, it "shall be made in writing, in open court, and in the presence of the defendant * * *." *Id.* The court "may" give the defendant a copy of the report, and the defendant has the option of examining the person who made the report. *Id.*

{¶ 33} Here, although the trial court ordered a psychological evaluation, Vaughn chose not to complete the evaluation. Thus, there was no report for the evaluator to make "in writing, in open court, and in the presence of * * *" Vaughn, or for the trial court to consider before sentencing Vaughn. Because a psychological evaluation report does not exist—due entirely to Vaughn's own actions—we cannot find that the trial court erred in its handling of the report. Vaughn's second assignment of error is not well-taken.

### III. Conclusion

{¶ 34} For the foregoing reasons, the June 1, 2018 judgment of the Lucas County Court of Common Pleas is affirmed. Vaughn is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Christine E. Mayle, P.J. _____

_____
JUDGE

Gene A. Zmuda, J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.