[Cite as *State v. Hymer*, 2025-Ohio-1691.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-02-026 |
| | : | O P I N I O N AND |
| - vs - | | JUDGMENT ENTRY |
| | : | 5/12/2025 |
| JESSE DANIEL HYMER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2021-06-0835

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

_____

**O P I N I O N**
_____

**BYRNE, P.J.**

{¶ 1} Jesse Daniel Hymer appeals from his sentences for burglary and violating a protection order in the Butler County Court of Common Pleas. For the reasons described below, we affirm.

**I. Factual and Procedural Background**

{¶ 2}    In July 2021, a Butler County grand jury indicted Hymer on 38 counts. Those counts included (1) one count of burglary; (2) 16 counts of violating a protection order; (3) 15 counts of menacing by stalking; (4) five counts of possession of criminal tools; and (5) one count of forgery. The charges stemmed from allegations that Hymer, over the course of many months in 2021, obsessively stalked, harassed, and terrorized his ex-girlfriend ("the victim"). During much of the time in which Hymer engaged in this alleged conduct, there was a protection order in place prohibiting Hymer from having contact with the victim.  The protection order was issued by the Butler County Court of Common Pleas, Domestic Relations Division. In addition to ordering that Hymer was to have no contact with the victim, the order also prohibited Hymer from entering the victim's residence and place of employment, and ordered that he must stay at least 500 feet away from the victim.

{¶ 3}    As relevant to the issues before us on appeal, the State alleged that, on June 10, 2021, Hymer placed a ladder against the victim's apartment, climbed the ladder, cut through a window screen, and entered the apartment. He was arrested by police while in the apartment.

{¶ 4}    Hymer and the State eventually entered into a negotiated plea agreement. Hymer agreed to plead guilty to the following four counts:

| Count | Offense | Revised Code | Count Level |
|-------|---------|--------------|-------------|
| 1 | Burglary | 2911.12(A)(3) | Felony Three[1] |
| 2 | Violating a Protection Order | 2919.27(A)(1) | Felony Three |
| 33 | Forgery | 2913.31(A)(1) | Felony Five |
| 34 | Possession of Criminal Tools | 2923.24(A) | Felony Five |

---

1. The burglary count was amended to a felony three from a felony two. The remaining counts were as charged in the indictment.

In return, the State agreed to dismiss the remaining counts of the indictment.

{¶ 5}  Hymer then appeared before the court for a plea hearing. During the plea hearing, Hymer's counsel stated that Hymer would stipulate to the facts as stated in the indictment. The State responded that it would "accept that stipulation to the statutory language contained in F3 burglary, as well as the violation of protection order, possession of criminal tools, and forgery." The court conducted a plea colloquy in which it informed Hymer of the ramifications of his anticipated guilty plea. Hymer indicated he understood those ramifications and entered his guilty plea.

{¶ 6}  Based on this stipulation and the plea colloquy, the court accepted the plea and found Hymer guilty on all four counts. The court ordered a presentence-investigative report and set a date for a sentencing hearing.

{¶ 7}  Hymer filed a sentencing memorandum prior to the sentencing hearing. In the sentencing memorandum, which was presented in a question/answer format, Hymer posed the question: "Are burglary and violation of a protection order allied offenses?" Hymer proceeded to answer this question in the positive, stating that it was "likely" that the court would find that Count One (burglary) and Count Two (violating a protection order) were allied offenses that must merge. In a section analyzing the issue, Hymer argued that the two offenses occurred on the same date at the same location. He also stated that, based on the language of the bill of particulars, the State was alleging that the offense of violating a protection order was the underlying offense constituting an element of the burglary offense.

{¶ 8}  At sentencing, the victim spoke about the life-altering effects of Hymer's conduct. She described this conduct as terrorizing her and as continuing to cause her to live in fear and anxiety. The victim stated that she was in therapy in the hope of one day being able to live a normal life.

{¶ 9}   The court then imposed the following prison terms: (1) a 36-month prison term on the burglary charge; (2) a 36-month prison term on the violating-a-protection-order charge; (3) a 12-month prison term on the forgery charge; and (4) a 12-month prison term on the possession of criminal tools charge. The court ordered each prison term to be served consecutively, for a total prison term of 96 months (that is, 8 years) in prison.

{¶ 10} Defense counsel referred to Hymer's sentencing memorandum—which, again, focused on Hymer's merger argument—during the sentencing hearing but did not explicitly object to the sentence or otherwise raise the issue of merger. There was no discussion at the sentencing hearing as to whether any of the offenses would or should merge. However, before imposing sentence, the court indicated that it considered Hymer's sentencing memorandum, which, again, focused on his merger argument.

{¶ 11}  Hymer appealed, raising a single assignment of error.

**II. Law and Analysis**

{¶ 12}  Hymer's sole assignment of error states:

> MR. HYMER'S CONSECUTIVE SENTENCES WERE UNLAWFUL.

{¶ 13}  Though Hymer's assignment of error references consecutive sentences, this appears to be a typographical error, as Hymer makes no argument that the trial court erred in deciding to run Hymer's sentences consecutively. Instead, Hymer argues that his convictions for burglary (Count One) and violating a protection order (Count Two) were allied offenses of similar import and therefore should have merged for purposes of sentencing. Specifically, Hymer contends that those offenses, as set forth in the indictment and bill of particulars, have the same import, the same animus, and were committed together as the same conduct constituted both offenses. We will focus our analysis on this argument, rather than on Hymer's apparently erroneous reference to

consecutive sentences in his assignment of error.

## A. Standard of Review

{¶ 14} "An appellate court typically reviews de novo whether two offenses are allied offenses of similar import." *State v. Flack*, 2024-Ohio-4622, ¶ 39 (12th Dist.), citing *State v. Williams*, 2012-Ohio-5699, ¶ 28. However, the State argues that Hymer is limited to a review for plain error in this appeal because he failed to object explicitly to the court's decision not to merge his sentences on Counts One and Two at the sentencing hearing. In making this argument, the State concedes that Hymer raised the issue of merger of these two counts in his sentencing memorandum, but argues that Hymer did not renew this argument at sentencing or develop any facts at sentencing to make a record for our review on the issue of merger.

{¶ 15} We find that Hymer sufficiently raised the issue of the merger of Counts One and Two at sentencing. Hymer submitted a sentencing memorandum to the court arguing that these specific offenses were "likely" to merge and setting forth legal argument in support. In fact, the sentencing memorandum consisted solely of two pages of legal argument about this issue.[2] Defense counsel referred to the sentencing memorandum at the hearing and the court acknowledged having "considered" the memorandum before imposing sentence. As such, while it would have been preferable for Hymer (and the State) to discuss the merger issue in more detail at the sentencing hearing, we find that in these circumstances, Hymer did not waive the issue for appellate review and we need not apply plain error review. We note that even if we were limited to a review for plain error, the Ohio Supreme Court and this court have repeatedly found that the "imposition of multiple sentences for allied offenses of similar import is plain error." *E.g.*, *State v.*

---

2. One letter of support signed by the director of a mentoring program was also attached.

*Underwood*, 2010-Ohio-1, ¶ 31; *State v. Thayer*, 2024-Ohio-3050, ¶ 10 (12th Dist.). Accordingly, we will conduct a de novo review. *Flack*, 2024-Ohio-4622 at ¶ 39.

**B. Double Jeopardy and the Law on Allied Offenses**

{¶ 16} Both the Ohio Constitution and the United States Constitution "prohibit the government from subjecting a person to multiple punishments for the same offense." *State v. Herzner*, 2021-Ohio-4244, ¶ 10 (12th Dist.), citing *State v. Ruff*, 2015-Ohio-995, ¶ 10. The double jeopardy provision in Article I, Section 10 of the Ohio Constitution states, "No person shall be twice put in jeopardy for the same offense." The double jeopardy provision of the Fifth Amendment to the United States Constitution similarly states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The federal double jeopardy clause applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). After citing both constitutional provisions, the Ohio Supreme Court in *Ruff* explained that "[t]he Double Jeopardy Clause protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *Ruff* at ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

{¶ 17} The state and federal constitutional protection against the third abuse—multiple punishments for the same criminal offense—is codified in R.C. 2941.25, Ohio's allied-offenses statute. *State v. Conrad*, 2018-Ohio-5291, ¶ 43 (12th Dist.). The allied offense statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in

two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 18} Stated more simply, R.C. 2941.25 provides that in determining whether offenses must be merged for sentencing because they are "allied," courts are to consider three separate factors: the conduct, the animus, and the import. *State v. Singh*, 2021-Ohio-2158, ¶ 60 (12th Dist.), citing *Ruff* at syllabus. "[A] defendant may be convicted of multiple offenses arising out of an episode of criminal conduct if: 1) the offenses did not have the same import, i.e. the offenses created separate, identifiable harms; 2) the offenses were committed separately; *or* 3) there was a separate animus or motivation in committing the offenses." (Emphasis added.) *State v. Clowers*, 2019-Ohio-4629, ¶ 30 (12th Dist.), citing *Ruff* at ¶ 25. The critical inquiry for an analysis under R.C. 2941.25 is the conduct of the defendant. *Id.*, citing *Ruff* at ¶ 26.

### C. Review of the Applicable Statutes and Information Related to the Offenses in the Record

{¶ 19} In the case before us, Hymer pleaded guilty to burglary in violation of 2911.12(A)(3). That statute provides:

> No person, by force, stealth, or deception, shall do any of the following:
>
> …
>
> (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, *with purpose to commit* in the structure or separately secured or separately occupied portion of the structure *any criminal offense*.

(Emphasis added.) R.C. 2911.12(A)(3).

{¶ 20} Hymer also pleaded guilty to violating a protection order, in violation of R.C.

2919.27(A)(1). That statute provides:

> No person shall recklessly violate the terms of any of the following:
>
> (A) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code. . .

R.C. 2919.27(A)(1).

{¶ 21} According to the amended indictment, the State charged Hymer with the following conduct in Count One:

> On or about June 10, 2021, in Butler County, Ohio, Jesse Daniel Hymer did by force, stealth, or deception, trespass, as defined in R.C. section 2911.21, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the defendant is present or likely to be present, with purpose to commit in the habitation any criminal offense, which constitutes the offense of BURGLARY (TRESPASS PERSON PRESENT/LIKELY PRESENT), a Second Degree Felony, in violation of R.C. §2911.12(A)(2), and against the peace and dignity of the State Of Ohio.

{¶ 22} And in the bill of particulars, the State made the following allegations:

> On or about June 10, 2021, in . . . Hamilton, Butler County, Ohio, Jesse Daniel Hymer did by force, stealth, or deception, trespass, as defined in R.C. section 2911.21, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the defendant is present or likely to be present, with purpose to commit in the habitation any criminal offense, to wit: defendant trespassed into the victim's home and violated a protection order, which constitutes the offense of BURGLARY (TRESPASS PERSON PRESENT/LIKELY PRESENT), a Second Degree Felony, in violation of R.C. §2911.12(A)(2).

{¶ 23} According to the amended indictment, the State charged Hymer with the following conduct in Count Two:

> On or about June 10, 2021, in Butler County, Ohio, Jesse Daniel Hymer did recklessly violate the terms of a protection

order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code, when the offender violates a protection order or consent agreement while committing a felony offense, which constitutes the offense of VIOLATING A PROTECTION ORDER, a Third Degree Felony, in violation of R.C. §2919.27(A)(1), and against the peace and dignity of the State Of Ohio.

{¶ 24} And in the bill of particulars, the State made the following allegations:

On or about June 10, 2021, in . . . Hamilton, Butler County, Ohio, Jesse Daniel Hymer did recklessly violate the terms of a protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code, when the offender violates a protection order or consent agreement while committing a felony offense, to wit: defendant violated a protection order while committing Burglary, which constitutes the offense of VIOLATING A PROTECTION ORDER, a Third Degree Felony, in violation of R.C. §2919.27(A)(1).

{¶ 25} Hymer argues that as alleged in the indictment and bill of particulars (1) the *harm* caused by entering the victim's home was not separate or identifiable from the harm of violating the protection order; (2) there was no evidence of a separate *animus* for each offense; and (3) there was no evidence that the offenses were *committed separately*. Therefore, Hymer contends that the offenses were allied and should have merged.

**D. Were the Offenses Dissimilar in Import?**

{¶ 26} We first turn to the "import" prong of the *Ruff* analysis—that is, the prong asking whether "the offenses created separate, identifiable harms." *Clowers*, 2019-Ohio-4629 at ¶ 30, citing *Ruff*, 2015-Ohio-995 at ¶ 25. Based on the limited record before us, we find that the record supports finding that Hymer's burglary and violating-a-protection-order offenses did not have the same import, and that they instead created separate, identifiable harms.

{¶ 27} The burglary offense caused two harms. First, the burglary caused the harm of "intrusion into the sanctity of the home." *See State v. Ruff*, 2015-Ohio-3367, ¶ 13

- 9 -

(10th Dist.). Stated in other words, the harm was the "violation and loss of the [victim's] sense of trust and security in [her] personal living space. . . ." *State v. Ramunas*, 2022-Ohio-4199, ¶ 25 (Fischer, J., dissenting). Second, the burglary also caused the harm of damage to the victim's apartment; this harm is demonstrated by the court's restitution order that included an award to the victim for the costs of replacing the window screen.

{¶ 28} The violating-a-protection-order offense caused several harms. First, Hymer's violation of the protection order deprived the victim of her court-ordered right to be free from any contact or proximity with Hymer, including to be free from contact with him at her dwelling place. We acknowledge that this harm *may* be sufficiently similar to the harm of invasion of privacy caused by the burglary offense, such that, if the deprivation of the victim's rights under the protection order were the only harm caused by the violation of the protection order offense, the offenses *may* have been of similar import.

{¶ 29} But there is a second harm associated with Hymer's violation of the protection order. Specifically, by willfully disregarding a court order, Hymer caused harm to the integrity of the judicial system. The power of a protection order rests in the respect that both the public and the person bound by the protection order hold with regard to the orders of the judicial system. If an offender willfully ignores a protection order, this action undermines the judicial system and the trust the public places in court orders to provide them with a measure of protection against the respondent in such cases. *See generally State v. Local Union 5760, United Steelworkers of Am.*, 172 Ohio St. 75, 89 (1961) ("If courts are to be maintained and if they are to function properly in carrying out their constitutional and statutory duties, the defiance of court authority, as exemplified by the misconduct in the present case, cannot be tolerated. Courts must vigorously protect the dignity of their judgments, orders, and process. All those who would by misconduct obstruct the administration of justice must be on notice that they do so at their peril.")

{¶ 30} Moreover, Hymer's violation of the protection order caused a third harm to the victim. This harm is the negation of the time, effort, and expense the victim expended in obtaining the protection order. There was evidence in the record, specifically evidence at the sentencing hearing, that Hymer was stalking the victim at her place of employment, where children were present. Hymer's actions were so concerning to the victim's employer that it placed the victim on a week of unpaid leave until she could obtain a protection order against Hymer. The victim testified that she spent that week obtaining the protection order and was then able to return to work. Thus, Hymer's subsequent violation of the protection order harmed the victim yet again by diminishing the value of her time, effort, personal expense, and lost wages in obtaining an order to protect her and her employer against respondent's harassing conduct and to allow her to return to work. This harm is acknowledged by the court's restitution order, which ordered Hymer to pay the victim $567.88 for the one week of work that she missed to obtain the protection order.

{¶ 31} Therefore, based on the specific facts and limited record in this case, we find that Hymer's burglary and violation-of-a-protection-order offenses created separate, identifiable harms. We therefore cannot find that the court's failure to merge the offenses was erroneous.[3] Having answered the first prong of the *Ruff* test in the affirmative and determined that Counts One and Two were offenses of dissimilar import, we need not address the remaining two elements of *Ruff*. *State v. Earley*, 2015-Ohio-4615, ¶ 12 ("An affirmative answer to *any* of the [required questions under *Ruff*] will permit separate

---

3. Burglary and other crimes that occurred contemporaneously with the burglary are not allied offenses under *Ruff* where the record supports the conclusion that each offense created separate and identifiable harms. *State v. Gillman*, 2015-Ohio-4421, ¶ 23 (4th Dist.) (holding that burglary and theft offenses occurring during the trespass resulted in separate and identifiable harms and were dissimilar in import); *State v. Chandler*, 2020-Ohio-1371, ¶ 8 (1st Dist.) (holding that burglary and attempted arsons caused separate and identifiable harms and did not merge); *State v. Thacker*, 2020-Ohio-4620, ¶ 121-123 (4th Dist.) (holding that burglary, rape, and kidnapping resulted in separate and identifiable harms and did not merge).

convictions." [Emphasis added.]).

{¶ 32} We overrule Hymer's sole assignment of error.

{¶ 33} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

## JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge