[Cite as *State v. Bingle*, 2026-Ohio-773.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                    :
                                                                   CASE NOS. CA2025-07-075
    Appellee,                                      :              CA2025-07-077

vs.                                                        :         <u>OPINION AND</u>
                                                                    <u>JUDGMENT ENTRY</u>
RYAN T. BINGLE,                               :              3/9/2026

    Appellant.                                    :

                                                             :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2025-02-0159


Michael T. Gmoser, Butler County Prosecuting Attorney, and Stephen M. Wagner, Assistant Prosecuting Attorney, for appellee.

John H. Forg, for appellant.


# **O P I N I O N**


**M. POWELL, J.**

{¶ 1}  Ryan T. Bingle appeals the judgment of the Butler County Court of Common Pleas convicting him of both theft and attempted extortion. Because we conclude that

these two offenses are not allied offenses of similar import, we affirm.

## I. Factual and Procedural Background

{¶ 2} On August 4, 2024, Bingle went to the apartment of the victim and accused the victim of attempting to engage in sexual activity with a minor and threatened to expose the victim's alleged conduct. According to the Bill of Particulars, Bingle threatened to kill the victim if he did not surrender property to Bingle "on the date of the offense and each future time Ryan T. Bingle came back to the [victim's] apartment." Bingle then took from the victim an electric bicycle valued at approximately $900, a Bluetooth speaker valued at approximately $140, an air pump valued at approximately $120, and $120 in cash. Several days later, Bingle returned to the victim's residence. The victim then reported the incidents to police. A subsequent search of Bingle's phone revealed conversations between Bingle and the victim, audio and video recordings of their confrontation, and photographs of the items taken from the victim's apartment.

{¶ 3} Bingle was indicted on four counts: Count One, theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1); Count Two, extortion, a third-degree felony, in violation of R.C. 2905.11(A)(2); Count Three, aggravated burglary, a first-degree felony; and Count Four, petty theft, a first-degree misdemeanor.

{¶ 4} On June 5, 2025, Bingle entered into a negotiated plea agreement with the State. In exchange for Bingle's guilty pleas to Count One as charged and Count Two as amended to attempted extortion, a fourth-degree felony, the State agreed to dismiss Counts Three and Four. There was no agreement as to sentence.

{¶ 5} At the plea hearing, defense counsel argued that the theft and attempted extortion charges were allied offenses that should merge, contending that "the theft could not have been accomplished but for the attempted extortion." The State responded that

the offenses were not allied because "extortion is completed as soon as the threat is made" and the victim "doesn't actually need to have his items stolen for extortion to be completed." The trial court determined that the offenses were not allied offenses of similar import. The court accepted Bingle's guilty pleas.

{¶ 6} The trial court sentenced Bingle on July 10, 2025. At the outset of the hearing, the court confirmed with defense counsel that there was no further argument that the offenses were allied, and counsel acknowledged that the argument had been made at the plea hearing and rejected. The court sentenced Bingle to 11 months in prison on Count One and 13 months in prison on Count Two, to be served consecutively.

{¶ 7} Bingle appealed.

## II. Analysis

{¶ 8} The single assignment of error alleges:

THE TRIAL COURT ERRED IN FAILING TO RULE THAT APPELLANT'S CONVICTIONS FOR THEFT AND ATTEMPTED EXTORTION WERE ALLIED OFFENSES UNDER R.C. 2941.25 AND SHOULD BE MERGED, RATHER THAN TREATED AS SEPARATE OFFENSES.

{¶ 9} Whether offenses are allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that we review de novo. *State v. Colquitt*, 2025-Ohio-2727, ¶ 34 (12th Dist.).

### A. The Statutory Framework

{¶ 10} Both the United States and Ohio Constitutions prohibit the government from subjecting a person to multiple punishments for the same offense. *State v. Ruff*, 2015-Ohio-995, ¶ 10. Ohio has codified this protection in R.C. 2941.25, which provides in relevant part:

Where the same conduct by defendant can be construed to
constitute two or more allied offenses of similar import, the

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 11} In *Ruff*, the Ohio Supreme Court established the analytical framework courts must apply when determining whether offenses merge. Courts are instructed to evaluate three separate factors: "the conduct, the animus, and the import." *Ruff* at paragraph one of the syllabus. A defendant may be convicted of multiple offenses if any of the following is true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. "An affirmative answer to any of the above will permit separate convictions." *Id.* at ¶ 31.

{¶ 12} The critical inquiry under R.C. 2941.25 is the conduct of the defendant. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. This means the "'analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 2010-Ohio-6314, ¶ 52. The burden lies with the defendant to establish his entitlement to the protection against multiple punishments. *State v. Glover*, 2017-Ohio-7360, ¶ 20 (12th Dist.).

**B. The Nature of the Record**

{¶ 13} Before proceeding, we note the deficiencies of the record before us. Neither party disputes that the relevant facts of this case are, as the State conceded below, "admittedly under-developed, principally as a result of Bingle's plea." There was no trial testimony. The victim was not present at sentencing. The record consists principally of the indictment, the Bill of Particulars filed for purposes of the plea, and the plea and sentencing hearing transcripts.

{¶ 14} This limited record does not foreclose the allied-offense analysis. Courts routinely conduct the *Ruff* analysis in guilty-plea cases based on the charging documents, the bill of particulars, and the plea record. *See State v. Hymer*, 2025-Ohio-1691, ¶ 26 (12th Dist.) (finding dissimilar import "[b]ased on the limited record before us"); *see also State v. Washington*, 2013-Ohio-4982, ¶ 24 (stating that "when deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record"). Under *Ruff*, the allied-offense determination depends on the defendant's conduct, and when a defendant pleads guilty and stipulates to the facts, the court properly relies on the charging documents and the record of the plea hearing to determine what conduct underlies each conviction. Moreover, the burden of establishing merger rests with the defendant. *Glover* at ¶ 20. If Bingle wished to contest the State's characterization of his conduct in the Bill of Particulars, the plea hearing was the time to do so. He did not.

**C. There is No Merger**

{¶ 15} Bingle pleaded guilty to theft in violation of R.C. 2913.02(A)(1) and attempted extortion in violation of R.C. 2923.02(A) and R.C. 2905.11(A)(2)[1]. He argues

---

1. Effective April 9, 2025, after Bingle was indicted, the prohibited conduct was moved to R.C. 2905.11(B)(2).

that because both offenses arose from a single confrontation with the victim and were committed for the same purpose, they are allied offenses of similar import that must merge. We disagree. Applying the *Ruff* framework to the particular facts of this case, we conclude that Bingle has failed to carry his burden of demonstrating that merger is required.

{¶ 16} Before addressing the three *Ruff* factors, we note a threshold matter. Bingle was convicted of *attempted* extortion, not completed extortion. This does not matter for our purposes here. The plea to attempted extortion was the product of a negotiated charge reduction from extortion, a third-degree felony, to attempted extortion, a fourth-degree felony. *See* R.C. 2923.02(E)(1). The "attempt" designation reflects this bargained-for reduction in the degree of the offense, not a concession that the threatening conduct did not occur or was somehow incomplete. Both the Bill of Particulars and the plea hearing confirm that Bingle did, in fact, threaten to kill the victim if the victim did not surrender property. The threat was made. It is the threat itself that constitutes the core conduct underlying the attempted extortion, and it is the threat that bears on each of the *Ruff* inquiries we now consider.

### 1. The Offenses Were Committed Separately

{¶ 17} We begin with whether the offenses were committed separately. This court has previously held that "if one offense is completed before the other begins, the offenses are considered separately for sentencing purposes even though the two offenses may have been committed in close proximity in time." *State v. Fields*, 2015-Ohio-1345, ¶ 18 (12th Dist.).

{¶ 18} Here, the statutory elements of the two offenses reveal their separateness. Extortion under R.C. 2905.11(A)(2) requires that a person, "with purpose to obtain any

valuable thing or valuable benefit," "[t]hreaten to commit any offense of violence." The offense is complete when the threat is made. It does not require the actual acquisition of the thing or benefit sought. Theft under R.C. 2913.02(A)(1), by contrast, requires that a person, "with purpose to deprive the owner of property," "knowingly obtain or exert control over" that property "[w]ithout the consent of the owner." Theft requires the actual taking or exertion of control over property. The attempted extortion was thus complete the moment Bingle threatened to commit violence against the victim if he did not surrender his property. The theft was not complete until Bingle actually took the victim's electric bicycle, Bluetooth speaker, air pump, and cash. The threat preceded and induced the taking. These were sequential acts, not a single unified act.

### 2. The Offenses Were Committed with Separate Animus

{¶ 19} We also conclude that the record supports a finding of separate animus. "Animus" for purposes of R.C. 2941.25(B) means "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." (Cleaned up.) *State v. Maloney*, 2023-Ohio-2711, ¶ 74 (12th Dist.).

{¶ 20} Bingle argues that both offenses were undertaken with the same animus— to obtain the victim's property. This argument has some force. Both theft and extortion are, at bottom, acquisitive offenses. At their broadest level of generality, both involve taking something of value from someone else. Under *Logan*'s framework, one could describe the immediate motive behind both the threat and the taking as the desire to obtain property.

{¶ 21} But *Logan*'s inquiry into "immediate motive" requires a closer examination than simply asking whether two offenses are of the same type. If it were enough to say

that both offenses were "about property" to establish identical animus, then virtually any combination of economically motivated offenses would merge. The question is not whether the offenses share a general category of motivation, but whether the defendant's immediate motive at the moment of each offense was the same. *See Logan* at 131.

{¶ 22} Here, the Bill of Particulars reveals that Bingle's immediate motive in making the threat was not merely to obtain the specific items he took on August 4, 2024. The threat was designed to terrorize the victim into surrendering property by "threatening to kill [the victim] if he did not give Ryan T. Bingle various items belonging to [the victim] on the date of the offense *and each future time* Ryan T. Bingle came back to the [victim's] apartment." (Emphasis added.) What Bingle sought through the threat was not a one-time acquisition of property, but the establishment of an ongoing regime of coerced compliance. The immediate motive of the extortionate threat was to subjugate the victim into a continuing relationship of submission and fear. The immediate motive of the theft was to deprive the victim of the specific electric bicycle, Bluetooth speaker, air pump, and cash that Bingle took that day. The former sought a power relationship, while the latter sought particular things. These are qualitatively different motives, not merely broader and narrower versions of the same one.

{¶ 23} This court's decision in *Maloney* does not compel a different result. In that case, we held that aggravated burglary and felonious assault were allied offenses that merged where "the facts indicate Maloney acted with a single criminal motive: to enter the victims' home for the purpose of inflicting physical harm on the victims." *Maloney*, 2023-Ohio-2711, at ¶ 74. There, the State itself conceded that the offenses were not committed with separate animus. *Id.* at ¶ 73. Critically, the felonious assault in *Maloney* "was the very reason for" the aggravated burglary. *Id.* at ¶ 72. The entry into the home

had no purpose apart from committing the assault. Here, by contrast, the attempted extortion had a purpose that extended well beyond the theft. The threat of future violence if the victim did not continue to surrender property on each return visit reveals a motive that went beyond the immediate taking. Where *Maloney* involved a single criminal objective pursued through sequential steps, this case involves distinct objectives: the acquisition of specific property on the one hand, and the establishment of ongoing coercive control on the other.

### 3. The Offenses Were of Dissimilar Import

{¶ 24} Finally, we consider whether the offenses caused separate and identifiable harm. Under *Ruff*, "[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff*, 2015-Ohio-995, at paragraph two of the syllabus.

{¶ 25} The parties agree that both offenses involved the same victim. The question is therefore whether the harm from each offense was separate and identifiable. Bingle contends that both offenses caused the same harm—the loss of property. The State counters that theft caused property loss while extortion caused psychological distress. We find the State's argument convincing.

{¶ 26} Theft causes harm in the form of deprivation of property. The victim lost his electric bicycle, Bluetooth speaker, air pump, and cash. This is a tangible, quantifiable economic loss.

{¶ 27} Extortion, particularly extortion accomplished through threats to commit violence, causes a qualitatively different harm. As the Sixth District observed in *State v. Vaughn*, 2019-Ohio-5005, ¶ 29 (6th Dist.), "extortion causes harm in the form of the

victim's psychological distress." The *Vaughn* court concluded that sexual battery and extortion were offenses of dissimilar import because the sexual battery caused "physical harm from unwanted sexual conduct" while extortion caused "mental distress from threats to expose sensitive material." *Id*. We recognize that the analogy to *Vaughn* is imperfect. That case involved categorically different types of physical harm (sexual battery) and psychological harm (threatened exposure of intimate images). Here, both offenses are directed at obtaining property, which arguably brings the harms closer together than in *Vaughn*. But the *Ruff* inquiry asks whether the harm from each offense is "separate and identifiable," not whether the offenses belong to entirely different categories. And the nature of these two offenses yields distinct harms even when both are property-motivated.

{¶ 28} We acknowledge that the limited record before us does not include direct evidence of the victim's psychological state. There was no trial testimony and no victim impact statement. We reason instead from the nature of the offenses themselves and the conduct described in the Bill of Particulars. Courts routinely assess the character of harm based on the statutory elements of the offense and the facts underlying a conviction, even in guilty-plea cases with limited records. *See Hymer*, 2025-Ohio-1691, at ¶ 26 (finding dissimilar import "[b]ased on the limited record before us"). Bingle's threat to kill the victim if he did not surrender property "each future time" Bingle returned is, by its nature, conduct that causes fear, intimidation, and the anxiety of anticipating future violence. Regardless of whether the extortion is labeled "attempted" or "completed," the threat of lethal violence was in fact made. The victim experienced the full force of that threat. The "attempt" designation goes to whether Bingle successfully obtained the valuable thing or benefit he sought through the threat. It does not undo the threat or diminish the psychological harm that the making of a death threat inherently occasions.

{¶ 29} Bingle urges us to view both offenses as causing the same harm because both ultimately relate to property. But this argument confuses the defendant's objective with the victim's injury. The thief's objective is to take property, and the harm to the victim is the loss of that property. The extortionist's objective may also involve property, but the means he employs inflicts a separate harm: the terrorization of the victim through threats of violence. When those threats extend to future occasions, the victim is left with the ongoing burden of fear and uncertainty. These harms are separate and identifiable.

### III. Conclusion

{¶ 30} We hold that the trial court did not err in declining to merge Bingle's theft and attempted extortion convictions. The offenses were committed separately, with separate animus, and caused separate and identifiable harm. Bingle's assignment of error is overruled. The trial court's judgment is affirmed.[2]

HENDRICKSON, P.J., and SIEBERT, J., concur.

---

2. We note a clerical error in the judgment of conviction. It states that Bingle was found guilty of **"ATTEMPTED EXTORTION** as to Count Two, a violation of Revised Code Section 2923.02~2905.11(A)(5) a fourth-degree felony." The record plainly indicates that Bingle was found guilty of violating division (A)(2) of R.C. 2905.11.

## <u>J U D G M E N T   E N T R Y</u>

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge